OVERTON, J.
 

 Defendant is sued on a promissory note, as a debtor in solido, for a balance of $10,513.37, with interest at the rate of 7 per cent, per annum from December 31, 1925, together with 10 per cent, attorney’s fees. The promissory note, upon which he is sued, reads as follows:
 

 “$17,000. Houma, La., May 11th, 1925.
 

 “December 31st, 1925, after date, for value received, I, we, or either of us, makers, and indorsers, promise to pay to the order of the Agricultural Credit Association, Incorporated, at its office in the City of Houma, La., the sum of seventeen thousand and no/100 dollars, with interest at the rate of seven per cent, per annum from maturity until paid.
 

 “Makers and indorsers of this note severally waive presentment for payment, as well as protest, and consent that time for the payment hereof may be extended without notice, and this, without discharging either from primary obligation hereunder; and all bind themselves, in solido, to pay the additional sum of ten ]>er cent, of the aggregate amount of principal and interest involved, as attorney’s fees, should this note be placed in the hands of an attorney at law, at, or after maturity, for collection by suit or otherwise.”
 

 
 *233
 
 The makers of this note are Louis and Alphonse Traina, who signed it as such. The note was indorsed in blank, before delivery, by defendant, immediately below a provision reading, in part as follows:
 

 “Indorsements appearing hereunder are made after full cognizance taken of all conditions imposed upon indorsers of this note, by the terms of the authentic act with which it is identified, and said conditions are accepted without restriction. * * * ”
 

 The note is paraphed by J. Louis Watkins', notary public, to identify it with an act of pledge and chattel mortgage, executed before him on May 11,1925, and has indorsed upon it two credits aggregating $6,486.63, representing payments made prior to the maturity of the note and the accrual of interest. After deducting these credits, the balance represents the amount for which suit is brought.
 

 Defendant urges that the note is not negotiable. 1-Ie does so apparently in an effort to withdraw it from the Negotiable Instruments Law (Act 64 of 1904). We think, however, in this case, that it is a matter of no particular importance whether the note is negotiable or not, although we may say that in our opinion it is negotiable. Sections 1 to 5, Negotiable Instruments Law. Defendant also urges that he is a surety, and not an indorser ; but the view we take of the case makes it unimportant whether he is regarded as an indorser or a surety, especially as he has bound himself, in solido, with the makers, to pay the amount of the note. But we may say that, in view of the fact that we have held that the note is negotiable, and therefore governed by the Negotiable Instruments Law, we consider him an indorser, for he placed his signature on the note otherwise than as maker, without indicating by appropriate words his intention to be bound as surety, but, to the contrary, as indorsei\ Negotiable Instruments Law, § 63.
 

 One of the pleas urged by defendant grows out of a provision in the contract of pledge with which the note is identified. The makers of the note, it may be here said, were sugar planters, and defendant indorsed the note sued on, for the purpose, according to his own evidence, of enabling the makers to obtain money to cultivate and harvest their cane crop. This crop constituted part of the property pledged. The provision referred to above, and contained in the act of pledge, reads as follows:
 

 “All crops shall be sold and delivered for account of the lender, with all proceeds paid directly to it; and as said proceeds accrue, they shall be imputed, at the lender’s option. [Here follow the imputations that may be made.]” ■
 

 The makers of the note sold and delivered to a sugar factory in the neighborhood more than sufficient cane, in good condition, than was necessary to pay the note. The factory made, out of the pi’oceeds of the cx-op, the two payments to plaintiff, aggregating $6,-486.63, credited on the note, but paid, it nothing more. Defendant, however, contends in effect that, under the excerpt from the pledge, quoted above, the delivery of the cane to the factory amounted to a payment of the note. In so urging defendant is incorrect. There is nothing in the provision quoted, or in any other provision iix the contract, making the delivery of cane to the factory a payment to plaintiff. The factory was .not made, by that provision, or by any other act, plaintiff’s agent to receive payment. The obligation to see that the factory made the required payments to plaintiff was on the makers of the note. Plaintiff- even did not select the factory to which the cane was sold, though it knew to what factory the maker’s of the note were delivering it. Our conclusion is that the delivery of the cane did not amount to payment.
 

 Another contention of defendant is that the makers of the note, to obtain the loan, pledged to plaintiff 40 shares of its capital stock, acquired by them, and that plaintiff,
 
 *235
 
 without defendant's consent, disposed of these shares, and therefore has deprived him of his right to subrogation, as relates to them, upon his paying the debt, and has thereby discharged him. In disposing of this contention it suffices to say that defendant consented to the disposition made by plaintiff of these shares, and hence the contention has no basis of fact upon which to rest. In connection with the hypothecation of these shares the pledge contains a provision reading as follows:
 

 “It being distinctly agreed and understood and said pledge and pawn is so made by the borrower with specific reference to said agreement and understanding that the lender association may, as and when called upon to do so by its re-discounting medium aforementioned, pledge or pawn its entire capital stock as security for the aggregate amount rediscounted with it for the making of crop advances, contracted for during the present year under this and similar acts.”
 

 Defendant was a party to the act of pledge and mortgage. 1-Ie became a party to it for the purpose of subordinating certain mortgages held by him to mortgages granted to plaintiff. .Having made himself a party to the very act with which the note indorsed by him is identified, he must be deemed to have consented to the disposition made by plaintiff of this stock, which was nothing more than the pledging of it, with the remainder of its capital stock, as security for the entire amount rediscounted by plaintiff with its re-discounting medium, as provided in the act of pledge in this case.
 

 Another contention of defendant is that the validity of the note has been destroyed by making a material change in it without his consent. No such defense was made in the lower court, and, strictly speaking it should not be considered here, as plaintiff has had no opportunity to show whether all of the parties to the note consented to the change. It appears to us, however, that the alteration made is not a material one. The change complained of is the running of a line through the figures at the top of the note, showing the amount of the note, and inserting, above them, figures showing the balance due. Section 125 of the Negotiable Instruments Law, provides that any alteration (referring
 
 to
 
 alterations made without the consent of all parties to the note) which, among others, changes “the sum payable, either for principal or interest,” avoids the note. Paragraph, 1 of section 17 of the Negotiable Instruments Law provides that:
 

 “Where the sum payable is expressed in words and also in'figures and there is a discrepancy
 
 between
 
 the two, the sum denoted by the words is the sum payable; .but if the words are ambiguous or uncertain, reference may be had to the figures to fix the amount.”
 

 The provision, relied upon by defendant as avoiding the note, is in its nature penal, and should be construed with reasonable strictness. Construing it with the provision last quoted, to ascertain whether the alteration , effected, properly speaking, a change in the amount of the note, we) find that it did not. From the provision last quoted it appears that it is the sum expressed by the words that is the sum, payable, and that resort may be had to the figures to determine that amount only when there is an ambiguity in the words. Here there is no ambiguity in the words. Such is the rule for ascertaining the amount also as to nonnegotiable instruments. See Revised Statutes, § 319. In our opinion the alteration, while not, to be commended, did not, within the intendment of the law, change the sum payable. The amount payable was as clear after the alteration as before it. The note was not thereby avoided.
 

 In the lower court, defendant urged two points which he does not discuss in his briefs in this court. One of them is concerning the collection and crediting of insurance, and the other is that he indorsed the note for the benefit of the payee. The record discloses that there is no merit in either contention.
 

 
 *237
 
 The judgment of the trial court was for plaintiff for the amount for which it sued.
 

 For the
 
 reasons assigned, the judgment appealed from is affirmed.