## Philadelphia National Bank *v.* Buchman et al., Appellants.

344

Argued January 5, 1934. Before Frazer, C. J., Kephart, Maxey, and Drew, JJ.

*A. Samuel Buchman,* for appellants, did not appear. —At common law, notes which provided for the payment of attorney's fees and expenses of collection upon default in payment, were non-negotiable: Johnston v. Speer, 92 Pa. 227; Woods v. North, 84 Pa. 407.

The legislature used the phrases "expenses of collection" or "an attorney's fee" as two distinct items because it employed the conjunction "or." A material alteration avoided one of the notes.

Before the act it was held that an alteration in the principal sum was material: Nagle's Estate, 134 Pa. 31; Wheeler v. Ahlers, 189 Pa. 138; Potter's Estate, 16 Pa. Superior Ct. 576; First Nat. Bank v. Kane, 13 Del. Co. (Pa.) 421; Craighead v. McLoney, 99 Pa. 211; Colonial Trust Co. v. Getz, 28 Pa. Superior Ct. 619.

A mere indorsee for collection holds the instrument subject to defenses against his indorser: Lewisburg Nat. Bank v. Broadhead, 2 Kulp (Luz. Co.) 285; Chestnut St. Nat. Bank v. Ellis, 161 Pa. 241; Long v. Long,

*Maurice Heckscher*, with him *Francis A. Lewis*, for appellee.—The clause in question is by its own terms never invoked unless the notes are not paid at maturity. This being the case, even regardless of the provisions of the Negotiable Instruments Act the negotiability of the notes cannot be affected: Milton Nat. Bank v. Beaver, 25 Pa. Superior Ct. 494.

The word "or" frequently has the meaning of the word "and" and this fact is often recognized.

The notations, endorsements and marks complained of upon one or more of the notes in suit are neither material nor are they alterations.

Allegations that defendants believe or are informed plaintiff is a holder of the notes for collection, is not the bona fide holder thereof nor their owner, without allegations of fact to support these beliefs, are insufficient to prevent summary judgment: State Bank of Pitts. v. Zahn, 52 Pitts. 191; First Nat. Bank v. Weinberger, 20 Lack. 323; Powell v. R. R., 20 Lack. 306; Kennedy v. R. R., 29 Dist. Rep. 751.

Opinion by Mr. Justice Maxey, March 19, 1934:

This is a suit in assumpsit to recover on three promissory notes, each for three months, in the respective sums of $2,500, $1,000, and $3,500, made by defendants to the order of themselves. Each note was endorsed in blank and discounted at the Central Trust & Savings Company of Philadelphia (hereinafter referred to as the trust company). The respective dates of these notes were September 2, 1931, September 16, 1931, and September 23, 1931.

The statement of claim declares that "before the date of maturity of each of said notes, Central Trust and Savings Company of Philadelphia, Pa., duly indorsed each of said notes in blank and for value received by delivery transferred said notes to this plaintiff," and that the "plaintiff thereby became and still is the holder of said notes without notice of any defects therein." 208 Pa. 368.

Then follows the usual averments of presentment for payment on the due dates and the refusal, and the items of credit for payments made on account of the notes.

To this statement of claim an affidavit of defense raising questions of law was first filed.. This was dismissed with leave to the defendants to file an affidavit of defense to the merits. Defendants did this, but on a motion and rule for judgment for want of a sufficient affidavit of defense, the rule was made absolute and judgment entered. This appeal followed.

In the affidavit of defense the question of the non-negotiability of the instrument was raised and upon "belief" and "information and belief" the defendants averred that the trust company's indorsement did not appear at the time of the delivery by it of the notes to the plaintiff, and that the same was affixed thereon after the dates of maturity of these notes, and that the notes were not negotiated to the plaintiff by the trust company but were delivered for the purpose of collection, and the proceeds applied to the indebtedness of the trust company to the Philadelphia Bank. It was denied that the plaintiff bank is the holder in due course of the notes without any notice of any defects therein and also averred "that from the knowledge and information in its possession, or which it should have known or acquired, the plaintiff knew or should have known" that the trust company "was then and there insolvent" at the times of the delivery of said notes to it and that "defendants then had certain rights of set-off, counter-claims and otherwise against" the trust company "by reason of its deposit balances, excess interest charges and otherwise."

The defendants then aver upon information and belief that these notes were transferred by the trust company to the plaintiff bank "either for collection, by way of security, pledge, or otherwise, for the purpose of reducing the indebtedness of the" trust company "to the plaintiff; that, the transactions between the" trust

company "and this plaintiff covering the transfer of said notes, including those of the defendants above referred to, were evidenced by certain oral and written agreements between them, the exact terms of which the defendants are unable to state precisely, but they have made inquiry from both of said banks and have made demand upon the plaintiff for production or inspection thereof" without success, "and defendants expect to be able to prove the terms of said agreement at the trial of said cause. Defendants therefore believe and aver that plaintiffs are not the bona fide holders and owners of said notes or any of them for value before maturity without notice of any defect therein, but that the Central Trust & Savings Co. are such owners."

The affidavit of defense then denies that "any of said notes were presented for payment for the reason that the said bank was closed at said times, having then suspended business. . . . . ." They then aver that the plaintiff made no demand upon them for payment and that upon advice from counsel they believed and averred that because they were also indorsers on the notes as well as makers that they were discharged from liability for failure "to give notice of said alleged dishonor, and notice of protest thereof to the defendants or either of them." The affidavit of defense then sets up some credits in the sums of $140.60 and $33.23, which it alleges are "the balances on deposit in the said Central Trust & Savings Co., to the credit of the defendants on October 6, 1933, which amounts were appropriated on account of the defendants' indebtedness on said notes; and to the further sums of $492.82, representing the. . . . . . sums, illegally withdrawn by the Central Trust & Savings Company from the funds in defendants' account on deposit with it, without warrant, right or authority and representing usurious interest charges on defendants' indebtedness to it over and above the legal rate of 6%." The affidavit of defense further claims material alteration in the figures on one of the notes, "in

that the amount thereof represented by the figures $2,500 was stricken out or deleted, and the figures of $2,481.04, were written in its place by the plaintiffs or by someone on its behalf with its knowledge," and that therefore they are discharged from liability on this note.

We agree with the court below that the affidavit is insufficient to prevent judgment.

Appellants' contention that the notes were non-negotiable is based upon the fact that the notes all contain a provision, as follows: "and in addition thereto, all legal costs, and expenses of collection, including an attorney's fee of 10% of the above sum, in case payment of this note shall not be made at maturity." We overrule appellants' contention that these notes were not negotiable.

The Negotiable Instruments Law of 1901, P. L. 194 (56 Purd. Stat., page 115), provides in section 1 that "an instrument to be negotiable must conform to the following requirements:......(2) must contain an unconditional promise or order to pay a sum certain in money." In section 2, it says, "the sum payable is a sum certain, within the meaning of this Act although it is to be paid:......(5) with costs of collection or an attorney's fee, in case payment shall not be made at maturity."

The appellants argue that since the provision in the notes in suit provides for both legal costs *and* expenses of collection including an attorney's fee, the notes do not call for a "sum certain" within the meaning of the Negotiable Instruments Law. They contend that the provisions of the law call either for "costs of collection *or* an attorneys's fee," but that the notes in suit call for both. This section of the Negotiable Instruments Law is practically uniform with the laws of other states on this subject, and Brannan's Negotiable Instruments Law (5th edition), sets forth the interpretation of appellate courts that have ruled on this section as follows: "The word 'or' in this subsection is not material, and

an agreement to pay 'attorney's fees *and* all costs of collection' does not impair negotiability, since the two phrases mean the same thing. Wood v. Ferguson, 71 Mont. 540, 230 Pac. 592. So also agreement to pay attorney's fees *and* 'all costs of collection,' held not to impair negotiability. Anaheim Nat. Bank v. Dolph, 201 Cal. 17, 255 Pac. 184; Golden State Bank v. Dolph, 201 Cal. 767, 255 Pac. 187; First Nat. Bank of Olive v. Dolph, 201 Cal. 767, 255 Pac. 187; Marks v. Kindel, 41 F. (2d) 584; note 17 Va. L. Rev. 188."

In this State when construing the intention of the legislature we have often been obliged to construe the conjunctions "or" and "and" interchangeably. Endlich on the Interpretation of Statutes, section 303, page 412, says: "To carry out the intention of the Legislature it is occasionally found necessary to read the conjunctions 'or' and 'and,' one for the other......The Married Woman's Act of 1848, in Pennsylvania, contained a provision making a married woman liable upon her contracts for necessaries, providing, however, that judgment shall not be rendered against her unless it should appear that the debt was 'contracted by the wife or incurred for articles necessary for the support of the family,' etc. It is obvious and was held that 'or' must be read 'and.' " This interpretation is supported by this court in the case of Murray v. Keyes, 35 Pa. 384, 391.

Appellants next contend that there was a material alteration which avoided the note for $2,500. This note (as are the other two) is in the usual printed promissory note form. In its upper left-hand corner a faint pencil line is drawn through the figure "$2,500" and written above these figures are the figures "$2,481.04." In the body of the note appear the words, "Two thousand five hundred dollars." The substitution in the upper left-hand corner was made, so the statement avers, because a payment of $18.96 had been received by the plaintiff on account of the indebtedness.

We hold that the "alteration" here was not a material alteration that avoided the instrument under sections 124 and 125 of the Negotiable Instruments Act. The effect of a material alteration of a negotiable instrument without the assent of all parties liable thereon is to avoid it, except when the alteration is made, authorized or assented to by the party against whom the action is brought. When the instrument is in the hands of a holder in due course, who is not a party to the alteration, section 124 provides that "he may enforce payment thereof according to its original tenor." Section 125 provides that a material alteration is the change of: "1. The date; 2. The sum payable either for principal or interest; 3. The time or place of payment; 4. The number or the relations of the parties; 5. The medium or currency in which payment is to be made; or which adds a place of payment where no place of payment is specified, or any other change or addition which alters the effect of the instrument in any respect." This section of the Uniform Negotiable Instruments Law has been interpreted in several jurisdictions, as follows:

Changing figures to show balance due.—Running a line through the figures showing the amount of the note and substituting new figures showing the balance due does not constitute a material alteration. Agricultural Credit Assoc. Inc., v. Iaccuzzo (1928), 167 La. 230, 119 So. 31.

Reducing amount when part payment is made is not a material alteration: Salem First Nat. Bk. v. Elmer (1926, Mo.) 278 S. W. 826.

"Changing figures to conform to written numbers.— Under the provisions of section 17, subdivision 1, that where the sum payable is expressed both in writing and in figures, and there is a discrepancy between the two, the sum denoted by words is the sum payable, an alteration of the figures in a check to conform with the written statement of the amount is not a material alteration where the written words clearly express the amount to

be paid, as such alteration does not change the legal effect of the instrument: People v. Lewinger (1911), 252 Ill. 332, 96 N. E. 837, Ann. Cas. 1912-D 239"; Uniform Laws Ann., vol. 5, Neg. Inst. Act, page 651.

Drawing a line through the figures in the left-hand corner of a note and the insertion of different fiures, is not a "material alteration" where the amount expressed in the body of the instrument remains unchanged: Morris Plan Co. v. Epstein (1933), 147 Misc. 164, 263 N. Y. S. 454.

Brannan's Negotiable Instruments Law (5th edition), page 966, says: "An alteration of the marginal figures of a note was not material when the sum stated in words in the body remained unchanged. Prudential Trust Co. v. Coghlin, 249 Mass. 184, 144 N. E. 283."

We agree with the court below that "there is in fact no material alteration and obviously no harm has been done the defendants." Furthermore, since the appellants did not aver that the appellee was a party to the alleged alteration "he may enforce payment according to the original tenor."

The appellants next contend that the plaintiff in the court below is an indorsee for collection only. This appears in the affidavit of defense "upon information and belief." No facts disclosing the nature of the information or the foundations of the belief are averred. Appellants' pronouncement that "a mere indorsee for collection holds the instrument subject to defenses against his indorser" is correct as a statement of law, but the affidavit of defense does not prima facie make the plaintiff appear as "a mere indorsee for collection." In Long v. Long, 208 Pa. 368, 57 A. 759, cited by appellants, the defendant "averred positively that the plaintiff" was "not the bona fide holder of the notes, but was merely an accommodation indorser, without loss by reason thereof; that the real owner" was "the Lebanon National Bank, against which a good defense" was "averred consisting of a set-off for breach of con-

tract, in a collateral matter." The positiveness of averment found in that case is wanting here.

The learned president judge of the court below succinctly sums up the deficiencies of the affidavit of defense, on this phase of the case, as follows:

"(2) The defendant 'believes' the endorsements by the payee were put upon the notes after maturity.

"(3) Defendant is 'informed' that plaintiff holds the notes for collection only.

"(4) General denials that plaintiffs are holders in due course; and an averment that defendants 'are advised by counsel,' 'believe and aver' that the notes are non-negotiable. These are conclusions and there is no averment that defendant 'expects to be able to prove' any of the facts averred under (2), (3) and (4). As to (2) they 'believe'; as to (3) they are 'informed'; as to (4) 'counsel advises' them on a question of fact. These averments are plainly insufficient."

That part of the affidavit of defense where the phrase "expects to be able to prove" appears has already been quoted in this opinion. What defendants "expected to be able to prove" were the terms (undisclosed) of certain alleged agreements heretofore referred to. Defendants admit that they cannot state precisely its terms; therefore, should they be able at the trial to prove the terms of this agreement it does not appear from anything pleaded that such proof would be of any avail to them. Plaintiff cannot be put to the test of a trial by such an equivocal challenge of the good cause of action it pleads. Plaintiff's averment that it is the bona fide holder of the notes in controversy has not been effectively contradicted.

The rule for judgment was properly made absolute. The judgment is affirmed.