600 A.2d 960

**WRENFIELD HOMEOWNERS ASSOCIATION, INC.**

v.

**Jonathan DeYOUNG and Janice DeYoung, Appellants.**

Superior Court of Pennsylvania.

Argued Aug. 14, 1991.

Filed Dec. 12, 1991.

---

John L. Walfish, King of Prussia, for appellants.

Steven L. Sugarman, Paoli, for appellee.

Before ROWLEY, President Judge, and BECK and HESTER, JJ.

BECK, Judge:

The primary issue we address on appeal is whether a Homeowners Association may assess attorneys' fees against a delinquent homeowner where the contract between the parties authorizes the Association to charge the delinquent homeowner with the cost of collection.

The trial court concluded the cost of collection included reasonable attorneys' fees. We agree and affirm the judgment of the trial court.

Appellants Jonathan DeYoung and Janice DeYoung purchased a townhome in Wrenfield, a planned residential development in Montgomery County. As homeowners in Wrenfield, appellants are members of the appellee, Wrenfield Homeowners Association, Inc. ("the Association"), and

are bound by the Association's recorded "Declaration of Covenants, Easements and Restrictions" ("Declaration").

The Association's annual budget, as prepared by its Board of Directors and approved by its members, determined the monthly assessment due for each unit was $435.09 (representing the general, insurance and maintenance assessments). In September 1987, when the DeYoungs made settlement on their townhome, they paid the Association their pro-rated portion of the monthly assessment due for September. However, the DeYoungs failed to pay any monthly assessments due October 1987 through October 1989.

On March 15, 1988, the DeYoungs wrote to the Association stating, without documentation, that the builder of Wrenfield had advised them that homeowner assessments would not be charged until at least one half of the residences were occupied. The Association denied having made any such arrangements with the DeYoungs or any other Wrenfield homeowner and continued to levy the monthly assessments. On August 25, 1988, when repeated notices of delinquency went unanswered, the Association wrote to the DeYoungs informing them of its decision also to impose a five dollar per day delinquency assessment as authorized by Article V, Section 5.2(e) of the Declaration. By a letter dated that same day, the DeYoungs notified the Association that they had a problem with bees nests on their property. This was the first time since failing to pay the monthly assessments that the DeYoungs complained about the Association's delivery of services. Six days later, the DeYoungs wrote a second letter to the Association stating that they had hired an exterminator to remove the bees nests and also complaining about weeds and a hole in their lawn.

In October 1988, the Association brought the instant action against the DeYoungs.[1] While the action was pend-

---

1. In response to the Association's complaint, the DeYoungs filed a counter-claim seeking recovery of the cost of the bee exterminator. On this counter-claim, the trial court found for the Association and

ing, the DeYoungs wrote various letters stating that the Association's services, including gardening, snow removal and security, were inadequate at times.

After a lengthy bench hearing, the trial court found that the Association's breaches, if any, were not material and, as such, did not excuse the DeYoungs from their obligation to pay the monthly assessments as provided for in the explicit terms of the Association's Declaration. The trial court also found no evidence of a separate agreement which relieved the DeYoungs of their liability for homeowners' assessments. In addition, the trial court held that where the Declaration authorized the Association to receive from delinquent homeowners the costs of collection, such authorization included reasonable attorneys' fees. The trial court, therefore, returned a verdict in favor of the Association and against the DeYoungs. Judgment was entered and this timely appeal followed.

On appeal, the DeYoungs contend that the trial judge erred in (1) awarding attorney's fees, in their full amount, to the Association; (2) precluding testimony by other witnesses proffered by the DeYoungs to bolster the De-Youngs' testimony; (3) awarding the Association assessments, late fees and interest; (4) admitting into evidence the statement of account for the DeYoungs' homeowners assessments levied by the Association's agent, and (5) failing to disqualify himself from hearing the case. Additionally, the DeYoungs contend that the verdict was contrary to the weight of the evidence. We disagree.

We have carefully reviewed the record and the briefs submitted by the parties. For the reasons stated in the trial court's opinion, we conclude that each of the De-Youngs' claims are without merit. The trial court has properly responded to each of the DeYoungs' contentions. Therefore, we affirm the judgment based on the trial court's well-reasoned, complete, and succinct opinion. However, since we have located no precedent that is controlling

against the DeYoungs and because no appeal was taken from this decision, the issue is not presently before us.

on the question of attorney's fees, we write separately to address that issue.

■ Appellant asserts that the court erred in awarding attorneys' fees to the Association pursuant to the terms of the Declaration. Appellant insists that the Declaration could not be interpreted to provide for recovery of attorneys' fees. "The general rule is that the parties to litigation are responsible for their own counsel fees and costs unless otherwise provided by statutory authority, agreement of the parties, or some other recognized exception." *Mantell v. Mantell,* 384 Pa.Super. 475, 488, 559 A.2d 535, 542 (1989) (citations omitted). In applying this standard to this case, the trial court determined that the parties had agreed in the Declaration to permit the imposition of attorneys' fees under the circumstances present here. The Declaration provides in Article V, Section 5.1:

> Each Owner of any Living Unit, by acceptance of a deed thereof, whether or not it shall be so expressed in such deed, is deemed to covenant, and agree to pay to the Association such General, Insurance and Maintenance, Special, and Delinquency Assessments, as well as Improvement Levies as are established herein, which shall be paid in the manner set forth herein ...
>
> All such assessments or levies together with interest thereon and *costs of collection thereof as hereafter provided,* shall be a charge or lien on the land against which each such assessment or levy is made, as of the date of such assessment or levy.
>
> (emphasis added).

Section 5.6 of the Declaration describes the remedies available to the Association in the event of non-payment of assessments:

> Any assessment installment not paid within fifteen (15) days after the due date shall be delinquent and shall bear interest at the then maximum lawful rate of interest. Therefore, the Association will provide Notice of such delinquency and *may bring an action at law to collect the same,* or foreclose the lien against the property, and

in the latter case, the Association may proceed to foreclosure in the same manner as provided for mortgages by an action of mortgage foreclosure.

(emphasis added).

In construing a contract "each and every part of it must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument." *Marcinak v. Southeastern Green School Dist.*, 375 Pa.Super. 486, 491, 544 A.2d 1025, 1027 (1988). In order to ascertain the intention of the parties, "the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement." *International Organization Master, Mates and Pilots of America, Local No. 2 v. International Organization Masters, Mates and Pilots of America*, 497 Pa. 102, 109, 439 A.2d 621, 624 (1981) (quoting *Foulke v. Miller*, 381 Pa. 587, 593, 112 A.2d 124, 127 (1955)). The court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement. *Metzger v. Clifford Realty Corporation*, 327 Pa.Super. 377, 385, 476 A.2d 1, 5 (1984).

The trial court imposed attorneys' fees on appellants because it found that such fees were included in the phrase "costs of collection." We agree. The Declaration clearly makes the defaulting homeowner liable for assessments plus the cost of collection for the amount in default. Furthermore, the Declaration authorized the Association to institute suit to collect delinquent assessments. Because the Association was a corporation and could only appear and be represented in Pennsylvania courts by an attorney, it was logical that attorneys' fees would be the primary costs of collection if it became necessary to institute suit. *See Walacavage v. Excell 2000, Inc.*, 331 Pa.Super. 137, 142, 480 A.2d 281, 285 (1984). If the Declaration had not intended to include counsel fees, the burden of the costs of collection would have fallen on the other homeowners. Giv-

en the nature of the Declaration and the fact that this was a contract between homeowners and their nonprofit Homeowners Association it is reasonable to conclude that the parties intended the costs of collection to include attorneys' fees.[2]

Moreover, the term "costs of collection" has specifically been construed in some contexts to refer not to the costs of suit but rather to the expenses incurred in the collection of a debt due. For example, in the context of promissory notes the phrase is synonymous with attorneys' fees.[3] This concept is illustrated by the Pennsylvania Supreme Court's decision in *Philadelphia Nat'l Bank v. Buchman*, 314 Pa. 343, 171 A. 589 (1934), where the Court considered whether a certain promissory note fell within the definition of a negotiable instrument under the Negotiable Instruments Law. The issue arose because the note in question required that in the event of default, the promisor would pay "expenses of collection, including an attorney's fee of 10% ...", whereas the Law required that negotiable instruments provide for payment of "costs of collection *or* an attorney's fee." *Id.*, 314 Pa. at 348, 171 A. at 591 (emphasis added). In determining that the note was negotiable, the *Buchman* Court stated:

2. Although the appellants here do not hold their property as a condominium, condominium ownership presents a somewhat analogous situation. In both instances, homeowners belong to a central homeowners' association which is charged with levying and collecting assessments, and which, in turn may often be confronted with the problems of delinquency collections. It is interesting to note that in this very similar setting, the legislature provided through the Uniform Condominium Act, that an association which secures a judgment against a homeowner for back assessments or fines is also entitled to receive costs and reasonable attorneys' fees as part of that judgment. 68 Pa.C.S.A. § 3315(f). Although the Act is not applicable in this case, the Act demonstrates that the notion of fee shifting in the context of agreements between homeowners and their homeowners' associations is based on sound policy.

3. *Costs of collection;* Strictly, expenses involved in endeavoring to make collection, as of a promissory note; but as used in or with reference to such note, the phrase is synonymous with attorneys' fees. There is commonly a provision to this effect in such notes. It does not refer to costs of suit, which are recoverable by law. *Black's Law Dictionary* 312 (5th ed. 1979).

This section of the Negotiable Instruments Law is practically uniform with the laws of other states on this subject, and Brannan's Negotiable Instruments Law (5th edition), sets forth the interpretation of appellate courts that have ruled on this section as follows: "The word 'or' in this subsection is not material, and an agreement to pay 'attorney's fees *and* all costs of collection' does not impair negotiability, since the two phrases mean the same thing. *Wood v. Ferguson*, 71 Mont. 540, 230 Pac. 592...."

*Id.*, 314 Pa. at 348–9, 171 A. at 591.

This statement clearly suggests that, at least in the context of negotiable instruments, the Supreme Court regards the phrase "costs of collection" as being interchangeable with the phrase "attorney's fees."

Moreover, we note that provisions for the payment of "costs of collection" have often been held to include reasonable attorney's fees in the event that it is necessary to institute legal action to collect. *2 S. Speiser, Attorneys' Fees*, § 15:13 (1973). *See also John Hancock Mut. Life Ins. Co. v. Casey*, 155 F.2d 229, 235 (1st Cir.1946); *Sulphur Export Corp. v. Caribbean Clipper Lines*, 277 F.Supp. 632, 635 (E.D.La.1968) (interpreting "costs of collection" to include attorney's fees.)

The fact that the Declaration did not explicitly state that attorney's fees are part of the costs of collection does not prevent the court from finding that there was a valid, enforceable agreement to assess them. In a case in which the controlling document did not expressly provide for attorney's fees, the Pennsylvania Supreme Court found that the language nevertheless permitted the imposition of such fees. The court found that a provision in a trust agreement requiring that a party "reimburse the Trustee for all its expenditures, and to indemnify and save the Trustee harmless against any liabilities which it may incur in the exercise and performance of its powers and duties hereunder," was broad enough to include the payment of attorneys' fees. *Fidelity–Philadelphia Trust Co. v. Philadelphia Transp.*

*Co.,* 404 Pa. 541, 548, 173 A.2d 109, 113 (1961). The Court specifically held that "the broad scope of reimbursement provided by the general provision of the Indenture is sufficiently specific to include attorneys' fees." *Id.,* 404 Pa. at 548, 549, 173 A.2d at 113–14. Similarly, we find that the term "costs of collection" within the context of the Declaration was also sufficiently broad enough to encompass attorneys' fees.

■ Appellants also argue that the amount of fees which the court awarded was not fair and reasonable for the legal services rendered. "The reasonableness of an award of attorney fees, of course, is a matter which rests within the sound discretion of the trial judge and will be altered by an appellate court only when there is a clear abuse of discretion." *Shearer v. Moore,* 277 Pa.Super. 70, 78, 419 A.2d 665, 669 (1980) (citations omitted). The trial court, in the first instance, is in the best position to evaluate the character of the services rendered, the time necessarily involved and to assess the reasonableness of the fee in light of the usual scale of compensation given the time and place of the litigation. *See Dorsett v. Hughes,* 353 Pa.Super. 129, 509 A.2d 369 (1986).

The parties stipulated at trial that the hourly rate of between $75 and $135 charged by the Association's attorneys was fair and reasonable. The only issue, therefore, concerned the reasonableness of the total time expended.

■ The Association offered expert testimony with regard to the reasonableness and necessity of the time spent by the Association's attorneys. The expert testified that, in his opinion, the time spent by Association's attorneys in prosecuting this case was necessary, fair and reasonable. Based on the testimony presented at trial and the court's independent evaluation of the record, the court determined that the time expended on this matter was reasonable under these circumstances. In addition, the trial court concluded that appellants rather than the Association precipitated much of the work involved in this case. There was no evidence that the Association engaged in unnecessary legal

efforts aimed at prolonging this litigation. Because the time spent and the fees charged by Association's attorneys were reasonable, the court did not abuse its discretion in awarding the total amount requested by plaintiff.

Judgment affirmed.