### WILD ACRES LAKES PROPERTY & HOMEOWNERS ASSOCIATION

v.

**Christopher CORONEOS and Dimitra Coroneos, his wife, Appellants.**

Commonwealth Court of Pennsylvania.

Submitted Jan. 3, 1997.

Decided March 3, 1997.

Anthony P. Daniel, Scranton, for appellants.

James V. Fareri, Stroudsburg, for appellee.

Before PELLEGRINI and LEADBETTER, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

This is an appeal[1] by Christopher Coroneos and Dimitra Coroneos (Coroneos) from the April 16, 1996 order of the Court of

---

1. A timely appeal from the trial court's order was filed with the Superior Court of Pennsylvania which, *sua sponte,* transferred the appeal to this Court on June 27, 1996.

Common Pleas of Pike County (trial court), which entered judgment in favor of Wild Acres Lake Property & Homeowners Association, Inc. (Association) and against Coroneos, and further ordered Coroneos "to pay their delinquent dues and assessment fees together with all reasonable collection costs, including Plaintiff's attorney's fees, plus interest at a rate set forth in the Association's bylaws."

Pursuant to the foregoing order, on June 17, 1996, judgment was entered for the Association against Coroneos, (1) for $7,278.06 being the total of the unpaid assessments against lots 30, 31 and 32 plus interest at the rate of eighteen percent (18%), (2) costs in the amount of $164.55, and (3) counsel fees in the amount of $1,680.00.

The facts, as established by the pleadings and as found by the trial court, are as follows. The Association is a nonprofit corporation and consists of an affiliation of property owners in a private development known as Wild Acres. Coroneos owned four lots[2] in Wild Acres and, as owners, are members of the Association and are bound by its bylaws.[3] Coroneos admit that there are recorded restrictive covenants which run with the land which covenants render each lot owner liable for dues and assessments imposed on each lot by the Association.[4]

Coroneos paid the separate assessments by the Association on lots 30, 31 and 32 following the acquisition of lots 30 and 31.

On August 21, 1990, Coroneos conveyed the four lots to themselves designating the four lots as a single lot identified in the deed as lot 30A. By virtue of the deed to themselves creating lot 30A, Coroneos refused to pay the separate assessments on lots 30, 31 and 32 but admit that they are liable for dues and assessments on a single lot. Hence this action by the Association to enforce the collection of the assessments on lots 30, 31 and 32.

On appeal here Coroneos raises five (5) issues. Four (4) of the issues are substantially the same and assert that the trial court erred in concluding that the per lot assessments attached to the separate lots 30, 31 and 32 rather than only to the one newly self-created lot 30A. Coroneos also assert that they are not liable for the Association's counsel fees.[5]

█ It is important to note that Coroneos does not challenge the validity of the covenants imposing the dues and assessments on lots within Wild Acres. Instead, Coroneos merely assert that they presently own only one lot and therefore are subject only to a single assessment on the one lot (lot 30). Thus, the underlying issue is whether an owner of multiple lots, in a plan of lots which are separately subject to dues and assessments as set forth in recorded restrictive covenants, can void separate lot dues and assessments on said multiple lots by conveying the multiple lots to themselves as a single

2. Lots 32 and 33 were purchased in 1980 and the deed for the two noted that since lot 33 was not buildable it was "not ... subject to the obligation to pay the annual lien and charge for club dues imposed on said lot pursuant to the Restrictive Covenants set forth in the contract and deed." Lots 30 and 31 were purchased by Coroneos in 1989.

3. Section 2.3 of the Association's bylaws provides, in pertinent part, that the obligations of membership shall be "to pay all dues, fees, charges, assessments and other financial obligations of membership." (R.R. 9a). Sections 3.1(D) and 6.2(A) of the Association's bylaws authorizes its board of directors to levy dues, fees, charges, assessments and other financial obligations of membership. (R.R. 11a and 18a). Section 6.2(C) of the Association's bylaws provides, in pertinent part, that "[i]n the event full payment has not been received by May 31st of

each year, the Association shall employ all appropriate methods of securing collections of the same, including, but not limited to, the filing of suits and the seizure and sale of the delinquent member's real and personal property." (R.R. 18a).

4. Paragraph thirteen of the recorded restrictive covenants provides, in pertinent part, that "[e]ach lot owner agrees to pay ... the sum of at least $75.00 for each lot. Such charge is intended to cover the expense of maintaining, protecting and operating the recreational facilities and roads in Wild Acres." (R.R. 7a). An annual lien and charge is also made for beach privileges. *Id.*

5. Coroneos neither challenge the amount of the dues and assessments on each of the three separate lots and the eighteen percent (18%) interest on the delinquency nor the amount of the counsel fees awarded to the Association.

lot.[6]

■ Covenants providing for assessment of an annual lien or charge are clearly covenants running with the land and as such are intended to bind successors in interest of all grantees and therefore are intended to follow title. *See Birchwood Lakes Community Association, Inc. v. Comis,* 296 Pa. Superior Ct. 77, 442 A.2d 304 (1982). Thus, the deed herein, conveying the four lots into a single lot, does not alter the underlying obligations imposed on the separate lots since the covenants in question are intended to follow title and bind successors in interest. Coroneos, by virtue of the deed to themselves, are successors in interest and continue to be bound by the terms of the restrictive covenants. Coroneos argument that, according to the plain language of Section 10(N) of the Association's bylaws,[7] they are only obligated to pay the dues and assessments for lot 30A is without merit. We therefore conclude that Coroneos remain liable for the separate dues and assessments imposed on lots 30, 31 and 32.[8]

■ Coroneos also assert that the trial court erred by awarding counsel fees. The trial court noted that it is authorized to include an award of counsel fees in favor of the Association where the covenants and bylaws permit the imposition of such fees in a collection action, *citing Wrenfield Homeowners Association v. DeYoung,* 410 Pa. Superior Ct. 621, 600 A.2d 960 (1991). Section 6.2(C) of the Association's bylaws provides, in pertinent part, that in matters of delinquency "the Association shall employ all appropriate methods of securing collections of the same, including, but not limited to, the filing of suits and the seizure and sale of the delinquent member's real and/or personal property. In the event any such proceedings are

brought, there shall be added to the amount due the Association's reasonable costs of collection, including court costs and attorney's fees." (R.R. 18a). Coroneos, while conceding that the Association's bylaws provide for the imposition of counsel fees, assert that they should not be held liable for such costs because they had a "good faith belief" in their actions; Coroneos, however, cite no authority in support of their position and are bound by the bylaws imposing liability for counsel fees.

Accordingly, the order of the trial court will be affirmed.

## ORDER

AND NOW, this 3rd day of March, 1997, the order of the Court of Common Pleas of Pike County, dated April 16, 1996, is affirmed.

**6.** There is nothing in the record before us that demonstrates that the Association or any or all of its members authorized Coroneos to abrogate their liability for dues and assessments on the separate lots by combining the separate lots into a single lot.

**7.** Section 10(N) of the Association's bylaws provides the following definition: " '[o]wner' shall mean and refer to the grantee in the last deed in the chain of title of the contract vendee (one or more persons or entities), holding any lot situat-

ed upon the properties, whether such ownership be in fee simple or as land contract vendee, notwithstanding any applicable theory of mortgage and shall not mean or refer to any mortgagee unless such mortgagee has acquire title pursuant to foreclosure or any proceeding in lieu of foreclosure." (R.R. 21a).

**8.** Our decision neither addresses nor determines the validity of the deed by which Coroneos conveyed the separate lots to themselves as a single lot.