J-A13036-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| WINCHESTER CONDOMINIUM ASSOCIATION | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH S. AURIA | : | |
| | : | No. 1512 WDA 2017 |
| Appellant | : | |

Appeal from the Judgment Entered October 5, 2017
in the Court of Common Pleas of Allegheny County,
Civil Division at No(s):   No. G.D. 16-012739

BEFORE:   OLSON, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                FILED AUGUST 3, 2018

Joseph S. Auria ("Auria") appeals from the Judgment entered against him and in favor of Winchester Condominium Association ("the Association").[1] We affirm.

The trial court set forth the facts underlying the instant appeal as follows:

> [The Association] is responsible for maintaining the common elements of the [Condominium], and such expenses are passed

_____

[1] Winchester Condominium Association is the association of unit owners of Winchester Condominium ("the Condominium"), which was declared in Allegheny County, Pennsylvania.  The Association was created under the terms and provisions of the Unit Property Act of Pennsylvania (Act of July 3, 1963, P.L. No. 196).  The original Declaration of Condominium ("the Declaration") was dated September 13, 1972, and recorded with the Department of Real Estate of Allegheny County.  Since that time, the Declaration and the Code of Regulation for the Condominium have been amended.

through to the unit owners on a percentage of ownership basis in the form of monthly fees or special assessments.

The Association filed this equity action[,] on July 13, 2016[,] in an effort to compel [] Auria to complete the replacement of certain aluminum wiring within the outlets of his condominium unit. The Association's insurance underwriter notified the Association that it had to mitigate or reduce fire risk at the property to maintain reasonable insurance coverage. The insurance underwriter suggested copalum [wiring] installation as a safety modification in all of the units in the complex, including the common areas, as an appropriate remedial measure.

The unit [o]wners were all informed through a series of notices from the Association of the requirement to replace the aluminum wiring in their outlets as a safety issue and in order for the Association to maintain reasonable insurance coverage. Each and every one of the [u]nit [o]wners at the [] Condominium[] completed arrangements to have the work performed, with the exception of [Auria].

Despite having several months to have the work completed, [Auria] failed to complete the work. Eventually, after the other [u]nit [o]wners had all completed their portion of the work, [] Auria finally informed the Association [that] he was not going to do the work in his unit. In essence, [] Auria believes the work is the Association's responsibility, since it involves common elements within the walls of the building.

By the time [the trial court] heard the case on June 29, 2016, [Auria] had agreed to perform the work and the only issue remaining for [the trial court] to decide was who was responsible for paying for the work....[FN]

_____

[FN] Said work was completed by [Auria] on July 29, 2017.

Trial Court Opinion, 12/5/17, at 1-2 (footnote in original).

Following a non-jury trial, the trial court found against Auria and in favor of the Association. The trial court directed Auria to pay for the copalum wiring and its installation. Auria filed a Motion for post-trial relief, which the trial

court denied.  After entry of Judgment on the trial court's verdict, Auria filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Auria presents the following claim for our review: "Does the contractual interpretation of the [] Declaration indicate that the copalum wiring behind the walls of a condominium unit constitute a common element[,] thereby requiring repair by the [Association], as opposed to the individual owner?" Brief for Appellant at 5.

Auria claims that, pursuant to Article Five of the Declaration, "[a]ll conduits, wires, pipes and utility lines up to the outlets thereof inside the walls of each unit" are part of the common elements.  Id. at 11 (quoting Declaration, Art. V(1)(h)).  Further, Appellant argues, that same subsection provides that wiring "up to" the outlet is a common element "because it includes all 'appurtenant' installation to the outlets." Id. (quoting Declaration, Art. V(1)(h)).  Citing contract law, Auria posits that wires that lead "up to" an outlet are common elements, "because the wires are attached up to the electrical receptacle." Id. at 12.  Referring to Webster's Dictionary, Auria defines a "receptacle" as "an electrical wall outlet designed for use with a plug." Id. (citation omitted).  According to Auria, the fact that the outlet is enclosed in a receptacle box does not alter the plain meaning of the words "up to" the outlet.  Id.  Auria directs our attention to the testimony of Edward F. Zehfuss ("Zehfuss"), the president of a real estate management firm

specializing in condominiums, who "admitted that wiring was in a receptacle box behind the wall and the wiring leads 'up to' the outlet plate." Id. (quoting N.T., 9/29/17, at 44).

When reviewing the findings of a court in equity,

> an appellate court's review "is limited to a determination of whether the chancellor committed an error of law or abused his discretion. A final decree in equity will not be disturbed unless it is unsupported by the evidence or demonstrably capricious." Kepple v. Fairman Drilling Co., 532 Pa. 304, 312, 615 A.2d 1298, 1302 (1992) (internal quotation marks omitted). Although facts found by the chancellor, when supported by competent evidence in the record, are binding, no such deference is required for conclusions of law, which we review de novo. Id.

T.W. Phillips Gas & Oil Co. v. Jedlicka, 42 A.3d 261, 267 (Pa. 2012).

The issue before this Court is whether the aluminum wiring, which was to be replaced with copalum wiring, is part of an "outlet," and therefore the responsibility of Auria, or a common element, and therefore the responsibility of the Association. Both parties direct our attention to the Declaration as supporting their interpretation of the term "outlet."

Pennsylvania courts have examined condominium declarations under the umbrella of general contract law. Wrenfield Homeowners Ass'n v. DeYoung, 600 A.2d 960, 993 (Pa. Super. 1991); see also MetroClub Condo. Ass'n v. 201-59 N. Eighth St. Assocs., L.P., 47 A.3d 137, 145 (Pa. Super. 2012) (stating that, although the condominium association had not persuaded the Court that the condominium declaration at issue was a

contract, it would apply contract principles when examining the declaration).

As our Supreme Court has explained,

> when interpreting the language of a contract, th[e] Court's goal is to ascertain the intent of the parties and give it effect. When the words of a contract are clear and unambiguous, the intent of the parties must be ascertained from the language employed in the contract, which shall be given its commonly accepted and plain meaning.

TruServ Corp. v. Morgan's Tool & Supply Co., 39 A.3d 253, 260 (Pa. Super. 2012).

> When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

Kripp v. Kripp, 849 A.2d 1159, 1163 (Pa. 2004).

Article V of the Condominium Declaration states, in relevant part, as follows:

Section 1. The common elements[2] consist of:

(e) Installation of all central service and utilities, including but not limited to all water pipes, drain pipes, electrical wires, general conduits, flues, chimneys, and the like or otherwise, including those within the interior wall within the confines of a unit; but exclusive of the outlets thereof into each unit.

_____

2 The term "common elements," when used in a condominium's declaration or by-laws, is defined by statute as "[a]ll portions of a condominium other than the units." 63 Pa.C.S.A. § 3103.

* * *

     (h) All conduits, wires, pipes, and utilities lines up to the outlets thereof inside the walls of each unit regardless of location, and all of the bearing walls, columns, beams, together with all elevator equipment and shafts, pipes, ducts, flues, chutes, other appurtenant installations and insulations to the outlets regardless of location, parking stalls, and manager's apartment.

Declaration, Art. V, Sec. 1(h) (emphasis and footnote added).

The Declaration provides no definition of the term "outlet." Webster's Collegiate Dictionary defines the word "outlet" as "a receptacle for the plug of an electrical device[.]" Meriam-Webster's Collegiate Dictionary 826 (10th ed. 2003). The dictionary defines the term "receptacle" as "one that receives and contains something: CONTAINER" or "a mounted female electrical fitting that contains the live parts of the circuit." Meriam-Webster's Collegiate Dictionary 975 (10th ed. 2003). It is not clear from the dictionary definitions whether the term "outlet" as used in the Declaration, includes the wiring at issue. Accordingly, the issue must be resolved by the trial court, as the trier of fact.

At trial, the Association presented the testimony of James L. Pace ("Pace"), a 37-year employee of the Condominium. Pace testified regarding the copalum installation, and its location with respect to each condominium unit, as follows:

     [Association's counsel]: ... [B]ased upon your firsthand knowledge and experience, is the copalum installation that was done at the [Condominium] located inside the outlets?

A. [Pace]: Yes.

Q. Is this something you personally observed?

A. Yes.

Q. Regarding the outlet, if I was to describe the outlet as the box in the wall where the plug is inserted, is that what we are talking about?

A. Yes.

N.T., 9/29/17, at 12 (emphasis added). Following cross-examination, the trial court asked Pace to clarify where the copalum wiring would be located, upon its installation:

THE COURT: ... As I understand this, when you take off the two screws for the plate, or the one screw for the plate, you pull the receptacle out into the open, right? –

THE WITNESS: Right.

THE COURT: You see they are making a distinction about these things?

THE WITNESS: Right.

THE COURT: So the receptacle is pulled out of the wall after you take the plate off, and ordinarily, with a normal plug there are two places where you -- there are two prongs at the top and the ground at the bottom; right?

THE WITNESS: Right.

THE COURT: And those wires go inside the wall later on, and you push it back in, and that all goes inside the wall; right?

THE COURT: And from that point in time those wires go throughout the apartment, or in this case they go throughout the office to somewhere along the line where it will attach to some sort of a junction box; is that correct?

- 7 -

THE WITNESS: Yes.

THE COURT: The work that was done here or asked to be done here, was it the areas where the receptacles were, which I just described, or was it the wires that went inside the wall and down to the junction box?

THE WITNESS: No, it was just the receptacle.

THE COURT: So only that area that I described that you pulled out of the wall with the three wires; is that right? There are two and the ground; correct?

THE WITNESS: Right.

THE COURT: ... So those are the parts we are talking about? We aren't talking about the ones strung through the walls?

THE WITNESS: Right. In order to do this procedure, they want aluminum and copper, and they put it together and crimp it and put a protective shield around it and put it back in the wall. It's like extending the wire a little bit more.

THE COURT: I wanted to make sure I understood what we were talking about here.

THE WITNESS: Right.

THE COURT: And once again, we are talking about that part that you pull out of the wall, and not the wires that run throughout the building and down to the junction box?

THE WITNESS: Right, you aren't talking about none of that.

N.T., 8/29/17, at 15-17.

Similarly, Zehfuss testified at trial regarding the replacement of the aluminum wire with copalum wire:

Q. (Counsel for the Association) The Judge pointed out that when this work is performed[,] the outlets are pulled out of the wall; is that correct?

A. (Zehfuss) That's how they work on it, yes.

Q. So it's pulled out of the wall, and it's inside the unit; is that correct?

A. Yes.

N.T., 8/29/17, at 26-27.

In its Opinion, the trial court found that the term "outlet" included the receptacle in which the copalum wiring was to be installed:

> The sole issue in this case involves interpreting the Declaration [] to determine who is responsible for replacement of the wiring within the outlets of [Auria's] condominium unit. The Declaration specifically excludes "the outlets into each unit" from the definition of common elements, meaning the outlets are the responsibility of the individual condominium owners. The wiring in question is within the outlets, which are then placed inside the outlet boxes behind the walls of the units. The wiring involves essentially the "guts" of the outlet, not the major conduit wiring that runs throughout the building behind the walls of the units.
>
> When the work in question is performed, the outlets are pulled out of the walls and inside the units. While it is true that, once completed, the outlet is then reinserted into the wall so only the plug receptacles are visible, [the trial court] believes the Condominium governing documents clearly put the responsibility for the outlets on the individual unit owners. This makes sense considering the outlets are located solely within [Auria's] unit and are for his sole use and enjoyment, and not in any manner common elements.

Trial Court Opinion, 12/5/17, at 2-3.

Upon review, the trial court's finding that the copalum wire was to be replaced inside of the outlet, and that the replacement would not be of wire that is a common element of the Condominium, is supported by the evidence of record. Further, because the replacement involved wiring that is not a

"common element" of the Condominium, the trial court did not err in requiring Auria to pay the costs of replacing the existing wire with copalum wire. Accordingly, we affirm the Judgment entered by the trial court.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/3/2018