# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ARAMARK US OFFSHORE SERVICES, LLC, | ) ) ) | |
| Plaintiff/Counterclaim-Defendant, | ) ) | |
| v. | ) ) ) | C.A. No.: N22C-07-010 FJJ |
| AMITY LODGES LTD., | ) ) ) | |
| Defendant/Counterclaim-Plaintiff. | ) | |

*SUBMITTED: April 25, 2023*
*DECIDED: May 17, 2023*

## OPINION AND ORDER

*Upon Consideration of Defendant/Counterclaim-Plaintiff's*
*Motion for Partial Summary Judgment:*

## GRANTED.

*Richard L. Renck, Esquire*, and *Tracey Timlin, Esquire*, of DUANE MORRIS, LLP, Wilmington, Delaware, for Aramark US Offshore Services, LLC.

*Laura J. Simon, Esquire*, and *Michael C. Dalton, Esquire*, of DALTON & ASSOCIATES, Wilmington, Delaware, for Amity Lodges Ltd.

**JONES, J.**

## INTRODUCTION

This breach of contract dispute stems from the owner of a New Mexico resort lodge's refusal to pay the lodge's food and staffing service provider. The service provider has filed a complaint alleging two counts against the lodge embracing Pennsylvania contract law. The lodge has counterclaimed against the service provider and moved for partial summary judgment on that counterclaim. The Court considers that motion here.[1]

The partial summary judgment motion tasks the Court with interpreting whether Pennsylvania law permits the contract to provide the service provider with attorneys' fees. The service provider contends it does; the lodge disagrees.

The Court finds that the operative language in the agreement does not entitle the prevailing party to attorneys' fees. Accordingly, for the reasons that follow, the motion must be **GRANTED**.

## FACTUAL OVERVIEW

Plaintiff Aramark US Offshore Services, LLC ("Aramark") and Defendant Amity Lodges Ltd. ("Amity") were parties to a five-year services contract that

---

[1] Initially, Amity moved for partial judgment on the pleadings pursuant to Delaware Rule of Civil Procedure 12(c). At oral argument, Amity tacitly conceded (and the Court agreed) that the 12(c) motion was procedurally improper in light of this Court's holdings in *Envolve Pharmacy Solutions, Inc. v. Rite Aid Headquarters Corp.*, 2021 WL 855866, at *4 n.45 (Del. Super. Mar. 8, 2021) ("it is not generally the Court's duty to dissect a single claim for either dismissal or rescue of its constituent theories of liability" (citation omitted)) and *inVentiv Health Clinic, LLC v. Odonate Therapeutics, Inc.*, 2021 WL 252823, at *5 (Del. Super. Jan. 26, 2021) ("[A]t the pleadings stage of a case, a trial judge is not a robed gardener employing Rule 12(b)(6) as a judicial shear to prune individual theories from an otherwise healthily pled complaint or counterclaim."). The parties, however, requested the Court to address the merits of the motion. To do so, the Court is treating the motion as a motion for partial summary judgment.

established their duties and responsibilities in the operation of a resort lodge in Jal, New Mexico. The agreement was executed on August 1, 2019.

Pursuant to the contract, Aramark agreed to provide "overall management of the [lodge]." In doing so, Aramark agreed it understood how to safely operate the lodge and properly train its employees. It also agreed that it would "strictly" perform under the contract in an "efficient, expeditious, workmanlike, skillful, professional and careful manner, in accordance with" the contract and "Good Industry Practice." The parties' relationship appeared civil and cooperative in the years that followed.

Then, things soured. Amity ceased making scheduled payments in April 2022. The following month, Amity provided Aramark with detailed descriptions and documentary support of the terms it believed Aramark had breached. Some of these alleged deficiencies, which included complaints of staffing and food quality issues, dated back to 2021. Aramark terminated the agreement in June 2022 and initiated this action shortly thereafter.

## STANDARD OF REVIEW

In deciding a motion for summary judgment, the Court must view the factual record in the light most favorable to the non-moving party.[2] The moving party has the burden to present evidence demonstrating no issue of material fact.[3] If that burden is met, the non-moving party must show evidence demonstrating a genuine

---

[2] *Merrill v. Crothall-American, Inc.*, 606 A.2d 96 (Del. 1992).
[3] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).

3

issue of material fact.[4]  Summary judgment is only granted when no material issue

of fact exists.[5]  If the record indicates a material fact is in dispute, summary judgment

may not be granted.[6]

## ANALYSIS

The issue before the Court is limited to whether the contract provided for

attorneys' fees.  This dispute arises from two distinct clauses in the contract.  The

first, Schedule D.1, establishes:

> Except for payments that are under dispute in accordance
> with Section 16.1 of the contract, interest will accrue on
> all late payments from the date due at 1.5% per month (or,
> if lower, the maximum legal rate).  *[Amity] will pay
> [Aramark]'s costs and expenses incurred to collect any
> amounts past due.*[7]

And the second, Section 5.6, states:

> If [Amity] violates this restriction, (i) [Aramark] will have
> the right to seek injunctive relief, and [Amity] will be
> liable to [Aramark] for *all reasonable legal fees, costs and
> expenses* incurred by [Aramark] to *enforce* this provision.[8]

On the surface, Schedule D.1 and Section 5.6 seem much the same.  But

Aramark argues that Schedule D.1 operates as an entitlement to recover the

attorneys' fees it incurred in collecting Amity's payments "past due."  Amity, on the

other hand, submits that if the parties intended Schedule D.1 to permit recovery of

---

[4] *Id.*
[5] *Merrill,* 606 A.2d at 99 (citation omitted).
[6] *Ebersole*, 180 A.2d at 470.
[7] Agreement Schedule D.1 ¶ 1.1 (emphasis added).
[8] Agreement at § 5.6 (emphasis added).

Aramark's attorneys' fees, they could have explicitly done so, as they did in Section 5.6.

Pennsylvania follows the "American Rule," which provides that absent statutory authority or a contractual agreement, each party must bear its own attorneys' fees and costs.[9] Contractual provisions providing for attorneys' fees are in derogation of the common law and must be strictly construed.[10] Successful litigants cannot recover attorneys' fees unless expressly authorized by a statute or agreement using specific language.[11]

Aramark maintains the phrase "cost of collection" is a term of art that encompasses attorneys' fees under Pennsylvania law. In support of this argument, Aramark relies on the Pennsylvania Superior Court's holding in *Wrenfield Homeowners Ass'n, Inc. v. DeYoung*.[12] In *Wrenfield*, new homeowners refused to pay delinquent monthly assessments to their homeowner's association ("HOA").[13] The HOA's Declaration permitted the HOA to "bring an action at law to collect" delinquent assessments "with interest thereon and costs of collection thereof as hereafter provided."[14] The *Wrenfield* trial court found that where the Declaration

---

[9] *Lavelle v. Koch*, 617 A.2d 319, 323 (Pa. 1992).
[10] *See id.*
[11] *Id.*
[12] 600 A.2d 960 (Pa. Super. 1991).
[13] *Id.* at 961.
[14] *Id.* at 962-63.

authorized the HOA to receive the "costs of collection" from the homeowners, such authorization included reasonable attorneys' fees.[15]

Affirming this finding, *Wrenfield* held:

> Because the [HOA] was a corporation and could only appear and be represented in Pennsylvania courts by an attorney, it was logical that attorneys' fees would be the primary costs of collection if it became necessary to institute suit. If the declaration had not intended to include counsel fees, *the burden of the costs of collection would have fallen on the other homeowners. Given the nature of the Declaration and the fact that this was a contract between homeowners and their nonprofit [HOA]*, it is reasonable to conclude that the parties intended costs of collection to include attorneys' fees.[16]

In other words, *Wrenfield* turned on whether the phrase "costs of collection" included, or was sufficiently broad enough to encompass, attorneys' fees.

Aramark also points to a handful of other Pennsylvania cases that reference *Wrenfield*. In *Hoyok v. Dippolito*,[17] the Pennsylvania Superior Court let stand an award of attorneys' fees for the collection of delinquent lease payments pursuant to a lease that permitted the landlord to recover "any and all damages, costs and expenses which [landlord] may suffer or incur by reason of any default of tenant or failure on his part to comply with the covenants of this issue."[18] But in *Hoyok*, as in *Wrenfield*, the defendant was in default of a clear obligation to pay, and the

---

[15] *Id.* at 962.
[16] *Id.* at 963.
[17] 2017 WL 976035 (Pa. Super. Mar. 13, 2017).
[18] *Id.* at *10.

underlying document did not involve separate use of "attorneys' fees" or "legal fees," as it does here.

Similarly, in *Insurance Company. of North America v. Ahuja*,[19] the United States District Court for the Eastern District of Pennsylvania found attorneys' fees were available under a contract providing reimbursement of "expenses paid or incurred in making, procuring, or attempting to procure settlement of or release from liability . . . or attempting to recover losses paid or expenses incurred in connection therewith."[20] But as applied to the present matter, the contract language from *Ahuja* is distinguishable. And more importantly, the contract between Aramark and Amity states that all exhibits and schedules are collectively considered "the Contract" and form "an integral part of [the] Contract."[21]

Finally, in *Sloan & Company v. Liberty Mutual Insurance Company*,[22] the United States Court of Appeals for the Third Circuit found the term "expenses and costs" to include attorneys' fees, in addition to other litigation-related expenses and costs, when used "in a paragraph discussing procedural mechanisms for lawsuits and other dispute resolution proceedings."[23]

---

[19] 1994 WL 13852 (E.D. Pa. Jan. 20, 1994).
[20] *Id.* at *2.
[21] Agreement at § 1.2.
[22] 653 F.3d 175 (3d Cir. 2011).
[23] *Id.* at 186-87 (citations omitted).

In light of the above, the question before the Court is whether *Wrenfield* and its progeny controls the instant dispute. The Court thinks not for three reasons. First, the *Wrenfield* homeowners defaulted on a clear obligation to pay, unlike here, where both parties purported to terminate the contract based on the other party's failure to remedy or cure, and where both parties had continuing obligations to each other.[24] Second, the underlying contracts in *Wrenfield* and its progeny did not apply the term "attorneys' fees" or "legal fees" to a different provision in the agreement. Third and finally, the clause at issue in Schedule D.1 is distinguishable from the clauses in the *Wrenfield* line of cases.

Because *Wrenfield* does not control the instant situation, the Court turns to well-settled Pennsylvania rules of contract interpretation. Four such rules are applicable to this case. First, "the entire contract should be read as a whole . . . to give effect to its true purpose."[25] Second, a contract must be interpreted to give effect to all of its provisions, and Pennsylvania courts "will not interpret one provision of a contract in a manner which results in another portion being annulled."[26] Third, "a word used by the parties in one sense is to be interpreted as employed in the same sense throughout the writing in the absence of countervailing reasons, such as thwarting the intent of the agreement."[27] And, finally, "[w]hen a

---

[24] Agreement at § 13.2
[25] *Pritchard v. Wick*, 178 A.2d 725, 727 (Pa. 1962).
[26] *LJL Transp. v. Pilot Air Freight*, 962 A.2d 639, 648 (Pa. 2009).
[27] *Com. ex rel. Kane v. UPMC*, 129 A.3d 441, 464 (Pa. 2015).

written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed."[28]

In the present case, Section 5.6 of the contract specifically addresses attorneys' fees, while Schedule D.1 does not. So, when the above principles of contractual interpretation are applied to the agreement, the result is clear: Schedule D.1 does not represent a clear agreement of the parties to shift attorneys' fees and costs. Had the parties intended to include a fee-shifting provision for circumstances now envisioned by Aramark, they could have explicitly done so, just as they did in Section 5.6. But they did not. The Court will not reward that decision by reading attorneys' fees into imprecise language.

More relevant to the present matter is *Knecht, Inc. v. United Pacific Insurance Company*.[29] In *Knecht*, the Third Circuit found that under Pennsylvania law, "[c]ounsel fees are recoverable only if permitted by statute, clear agreement of the parties, or some other exception[]."[30] And, applying Pennsylvania law, *Knecht* found the language "such sum or sum 'as may be justly due'" did not include attorneys' fees absent an express provision allowing for recovery.[31]

---

[28] *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982).
[29] 860 F.2d 74 (3d Cir. 1988).
[30] *Knecht, Inc. v. United Pac. Ins. Co.*, 860 F.2d 74, 80 (3d Cir. 1988) (citing *Corace v. Balint*, 210 A.2d 882, 887 (Pa. 1965)).
[31] *Knecht*, 860 F.2d at 81 ("Yet in United's bond no reference was made to attorney's fees. In the circumstances, we conclude that attorney's fees are not recoverable in this action.").

9

Pennsylvania law dictates that contracting parties must unambiguously state their desire to deviate from the American Rule so the parties have notice of their potential liability when entering into or disputing contracts. Expressly stating that the fees are available is, by far, the easiest way to do this. The record amply supports the conclusion that Aramark failed to do so.

## CONCLUSION

Based on the foregoing, Amity's motion for partial summary judgment is **GRANTED.**

**IT IS SO ORDERED.**

_/s/ Francis J. Jones, Jr._
Francis J. Jones, Jr., Judge