IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Southpointe Golf Club, Inc., : 
 : 
Appellant : 
v. : No. 1420 C.D. 2019
 : Argued: February 8, 2021
 : 
Southpointe Property Owners' Association, : 
Inc.; Redevelopment Authority of the : 
County of Washington; R&M Investment : 
Group LLC; Technology Drive LLC; : 
Ansys, Inc.; Crown Castle USA, Inc.; : 
701 Technology Drive Partners L.P.; : 
Creehan Properties, LP; SPCDMG LTD; : 
1750 East Realty, L.L.C.; Landmark : 
Limited Partnership; Southpointe : 
Rink Assoc L.P.; Centimark Corporation; : 
Southpointe 16 Associates; Kossman- : 
Phoenix Limited Partnership; Andritz : 
Metals, Inc., f/n/a Bricmont, Inc., f/n/a : 
Andritz Bricmont, Inc.; Hershey Leasing : 
Company, LP; Champ Investment : 
Limited Partnership; Creehan Properties : 
151, LP; Auma Actuators Inc.; Mark K. : 
German; Accutrex Products, Inc.; : 
Southpointe #4 Green Associates; Four : 
Thousand Nine Hundred West Broad Street : 
Laundry, LLC a/k/a 4900 West Broad Street : 
Laundry, LLC an Ohio limited liability : 
company n/k/a Fairway View, LLC; : 
Southpointe 375 Associates, L.P.; Merces : 
De Quevedo Freemon 2007 Living Trust, : 
Philip G. and Richard A. Freemon Trustees; : 
Lexington TNI Canonsburg, LP; Summit : 
& Plaza II Holdings LP; Ronald M. Kean : 
& R. George Yurasko and Frederick A. : 
Farrell Trustees of United Food & : 
Commercial Workers, Local Union 23; : 
Nelson M. and Darlene M. Heeter; : 
Southpointe/Miller Limited Partnership; : 
501 Technology Partners, LLC; : 
Schenley Center Assoc II LP; 121 : 
Champion LLC; Technology Drive, LLC; :

KRB Development Co., L.P.;                      :
Fountainhead Southpointe Associates;            :
Southpointe Hotel and Conference Center         :
L.P., Summit & Plaza II Holdings, LP;           :
Dialysis Clinic, Inc.; Ages Associates LP       :
Washington County Authority; Lawrence           :
and Kimberly A. Melen; Donald K. and            :
Pamela B. Robinson; Sophia C. Sarris;           :
William A. and Kathleen Baron; Everett E.       :
Dunn and Connie A. Dunn, Trustees Of            :
The Dunn Revocable Trust dated                  :
November 13, 2008; James E. and Tracey L        :
Jacobs; Thomas P. Kazas and Sandra Frank        :
-Kazas; Brett E. Murawski and Kelly J.          :
Chaney; Walter E. and Barbara A. Kryspin;       :
Gary M. Stefansky and Suzanne A.                :
Orbanick-Stefansky; Mark and Lauren M.          :
Lega; Andrew J. and Maureen L. Kicinski;        :
Betty Harris Rainier Revocable Trust dated      :
May 15, 2012, Betty Harris Rainer Trustee;      :
Jeffrey J. and Janene M. Jost; Mary Jane        :
Broglia; Cary D. Cowden; Louis V. and           :
Elizabeth Valente; Ronald L. and Elaine C.      :
Friedman; Paul Robert and Regina M.             :
Johnston; Guthrie and Viola Taboni;             :
Patrick G. and Lyn C. McGinnis; James H.        :
and Donna J. White;  Richard Otter and          :
Deborah C. Friedrich; Joseph J. and Mary        :
Ann Brown; Bruce E. and Margaret  A.            :
Hough; Raymond W. Sauer, Jr. and Helen          :
F. Sauer; Geno A. and Justine Pisciottano;      :
John P. and M. Kathleen Fox; Richard A.         :
and Sharon Barcelona; Geno R. and               :
Cynthia N. Levi; Steven W. and Melissa          :
Ann Chesher; Mark S. and Gen Cameron            :
Wilson; William K. and Patricia Snodgrass;      :
Jeffrey M. and Angela D. Abbott; David A.       :
and Mary E. Fetchko; Louis and Joellyn          :
Barletta; Kevin F. Owsiany; John C. and         :
Arlene E. Stankus; Douglas R. and Melissa       :
L. Hodinko; Elizabeth E. and Daniel F.          :
Vorum; Fairway Landings Townhouses              :
of Southpointe Assn. Inc.; Kevin and            :

Doreen Lynn Ruffe; Terri Bush Brown; :
William B. and Connie Gross; Wendy Jean :
Obrien; Paul B. DeFazio; David A. Ross; :
Griffith Family Trust, Peter D. Friffith and :
Bonnie L. Griffith, Trustees; Peter H. and :
Joyce I. Phillips; William R. Piper and :
Linda O'Leary; Regis J. McKenzie, III; :
Gayla R. Hagg; Steven Speca; Tony L. and :
Jan B. Angelle; Ruth A. Lutz, Trustee For :
The Lutz Family Trust; William J. and :
Deborah A . Harrison; Roger D. Graham, Jr. :
and Mary Ann Graham; Patricia K. Hazen; :
Heart & Seoul Productions, LC a Michigan :
limited liability company, Stephanie L. :
Kubik; Michele A Docchio; John S. and :
Ellen J. Steigerwald; Marilyn I. Goodwill; :
Corinne McCullough; Phillip J. Falconi; :
Mark E. Nance; Walter M. Castro; Lynn A. :
Deppen; Michael W. and Kathy Smith; :
Mark I. Linn and Renee A. Battistone; :
Varun Mishra; David Harkreader and :
Lynne D. Dunn; Southpointe Holdings, :
LLC; Jeffrey H. and Jonelle M. Stambaugh; :
Luca Zoia and Chiara Gonin;  Katheryn :
Leigh Tate; Alexandra Kusturiss; John A. :
and Marianne Zywan; Jeffrey J. Livolsi; :
Christopher J. and Lyn R. Logelin; Thomas :
J. and Betty J. Zayac; Douglas B. Blobner :
Revocable Living Trust, dated :
October 20, 2010, Douglas B. Blobner :
Trustee; Robert S. and Janet M. Camel; :
Richard K. and Penny Ann L. Thomas; :
Eric J. and Connie I. Bruce; Wayne Trust :
Walter K. and Virginia M. Wayne Trustees; :
Subhash Joon; Derek  A. Rice; Gregory A. :
Karabetsos; Janet Torriero; John and Carol :
Riddle; Donald L. and Margret S. Hocevar; :
Mary Kay Graziano; Margaret K. Fischer; :
Thomas Lee and Allyson Ann Fritz; :
Samuel J. Rodgers and Rebecca L. Black; :
Edmond A. and Susan Marie Cononge; :
Robert F. Milinski and Stanley J. Zawacki; :
Roslyn Corton; Ying Wei; Marlene V. :

Pierotti Revocable Trust, Marlene V.      :
Pierotti, Trustee; Richard C. Goodwill;      :
Timothy J. and Carmen Cecilia Aitken;      :
Joe and Anne Trask; Bonita L. Sidick;      :
David H. and Victoria L. Smith; Alice F.      :
Dagg Trust; Alice F. Dagg Trustee; Larry J. :
and Catherine A. Cavallo; Cindy Rice-      :
Andrea and Richard Andrea; Dolores Kara      :
Revocable Trust Dolores Kara Trustee;      :
Bernard John Hobach 2001 Irrevocable      :
Trust, Bernard J. Hobach, Trustee; Nancy      :
E. Flynn; Paul J. and Geraldine McKosky;      :
Melelaos and Kiki Doumas Living Trust      :
dated December 20, 1999, Menealaos      :
Doumas and Kiki Doumas, Trustees;      :
Richard J. Kawalek; Patricia Nan Daum;      :
Lynda L. Kelly; Charles W. and Dawn      :
Lynn Fike; Norman Michael Revocable      :
Trust, Alice J. Michael Trustee; Earl L.      :
and Maria A. Romesberg; William R. and      :
Jennifer S. Davis; Derek Peabody and      :
Ashley R. Pawlish; Joseph A. and Amy L.      :
Wateska; Gary D. and Karen L. Smith;      :
Ronald M. and Eva M. Bozick; Robert J.      :
Braithwaite, Sr., and Mary T. Braithwaite;      :
Phillip J. Binotto, Jr. and D. Jill Binotto;      :
William S. and Laura K. Tate; Shaney L.      :
Rudar; Scott T. and Lauren Dooley;      :
Raymond R. Parry, Sr. and Barbara L.      :
Parry; David A. and Cheryl S. Bayne;      :
Frank C. Botta; Michael J. and Irene      :
A. Fostyk; Timothy P. and Stephanie      :
Galloway; Peter F. and Deborah L.      :
Singleton; Richard Dean and Judith Ellen      :
McAllister; Paul V. Ambrose Family      :
Trust, Paul V. Ambrose and Gloria J.      :
Ursitz Trustees; Dennis P. and Pamela J.      :
Weakland; Richard K. Miller; Camille M.      :
Herbert; Arthur and Ellen Mezerski; Scott      :
C. and Laurel L. Sanders; Ruth Ann      :
Falconi; Bernard J. Shaughnessy, Jr. and      :
Melissa J. Shaughnessy; Justin R.      :
Domachowski; Ronald J. and Natalie A.      :

Aiello; Scott Cook; Southpointe : Development LLC d/b/a Southpointe : Apartments; Terry Ann McCaffrey; Renee : Cavalovich; Doreen V. Latona; Robert : Premro; Adrienne L. Compeggie; William : H. and Phyllis J. Savatt; George S. Villani; : Mark Borden; Herbert F. and Ana L. : Balzuweit; Adam J. Fulton; GL Harakal : Group, Inc; Gerald Thomas and Rebecca : Marie Mathews; Tammi R. Brown; Fairway : View, LLC; Scott and Alana Hudson; Alvin : and Patricia Miller; Robert A. Simmers; : Lynn S. Frank; Benjamin M. Neenan and : Paige Williamson Neenan; Mac & Mac : Properties LLC; Brett J. Ross; Mark E. and : Jeanne E. Becker; Susan P. Armstrong; : Susan R. Passante; Cory Bak; Rahul Bazaz; : Lee and Alexis Wetzel; Scott T. Dooley; : Kenneth and Linda Matz; James J. Ratti; : Janelle Vicinelly; John, Jr. and Deanna R. : Lubic; William L. Lyons, IV; Gerald W. : and Susan M. Horton; Pamela C. Polacek; : Joel Hatfield; Joan Doerschner Enz; : Charles J. Stefko; Randy W. and Cathy J. : Bell; Christian and Rochelle A. Delgado; : Helga E. Kercher; James Franklin Realty : LLC; Timothy McManama; C. Scott and : Patricia R. Warman; Margot A. Vaughan; : Richard C. and Dianna L. Sponaugle; : Anthony K. Gianettino and Ironwood/ : Wedgewood Homeowner's Association, : Inc.; Fairway Landings Townhomes of : Southpointe Association, Inc.; and The : Fairways Condominium of Southpointe : Association, Inc. :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE J. ANDREW CROMPTON, Judge

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  May 7, 2021


Southpointe Golf Club, Inc. (Golf Club) appeals the order of the Washington County Court of Common Pleas (trial court) denying the Golf Club's summary judgment motion, and granting the summary judgment motion of a number of landowners and intervenors and entering judgment in their favor and against the Golf Club with respect to the Golf Club's Amended Complaint in Equity for Declaratory Judgment (Amended Complaint) filed pursuant to the Declaratory Judgments Act (DJA).[1]  We affirm.

The Southpointe development consists of a 589-acre planned community of mixed uses in both North Strabane and Cecil Townships, Washington County.  In 1989, the Redevelopment Authority of the County of Washington (Authority),[2] as "Declarant," executed a Declaration of Protective Covenants

---

[1] 42 Pa. C.S. §§7531-7541.

[2] Section 9(h), (j), (k), (t), and (u) of the Urban Redevelopment Law (URL), Act of May 24, 1945, P.L. 991, *as amended*, 35 P.S. §1709(h), (j), (k), (t) & (u) provides:

> An Authority shall constitute a public body, corporate and politic, exercising public powers of the Commonwealth as an agency thereof, which powers shall include all powers necessary or appropriate to carry out and effectuate the purposes and provisions of this act, including the following powers in addition to those herein otherwise granted:

* * *

**(Footnote continued on next page…)**

2

(Declaration) for the development, which was recorded on April 25, 1991. *See* Reproduced Record (R.R.) at 36a-89a. The "Overview" of the Declaration states, in pertinent part:

> (h)    To assemble, purchase, obtain options upon, acquire by gift, grant, bequest, devise or otherwise any real or personal property or any interest therein from any person, firm, corporation, municipality or government:  Provided, That no real property, located outside of a redevelopment area, which is not necessary to the corporate purposes of the Authority nor necessary to the successful redevelopment of a redevelopment area, shall be purchased by the Authority;
>
> \* \* \*
>
> (j)    To own, hold, clear, improve and manage real property;
>
> (k)    To sell, lease or otherwise transfer any real property located outside of a redevelopment area and, subject to approval by the local governing body, any real property in a redevelopment area: Provided, That with respect to a redevelopment area the Authority finds that the sale, lease or other transfer of any part will not be prejudicial to the sale or lease of the other parts of the redevelopment area, nor be in any other way prejudicial to the realization of the redevelopment proposal approved by the governing body;
>
> \* \* \*
>
> (t)    To make and execute contracts and other instruments necessary or convenient to the exercise of the powers of the Authority; and any contract or instrument when signed by the chairman or vice-chairman of the Authority, or by an authorized use of their facsimile signatures, and by the secretary or assistant secretary, or, treasurer or assistant treasurer of the Authority, or by an authorized use of their facsimile signatures, shall be held to have been properly executed for and on its behalf; [and]
>
> (u)    To make and from time to time to amend and repeal by-laws, rules, regulations and resolutions[.]

3

> Compliance with the provisions of this Declaration will initially be monitored and administered by the [Authority]. The [Authority], in its discretion, at any time, but no later than the time it sells the last parcel of land, may cause the [Southpointe Property Owners' Association, Inc. (Association)] to be formed. Upon the formation of the Association, it will assume the responsibility for maintaining the landscaping, signs and lighting in the Public Areas.
>
> The Declaration will remain in effect through January 1, 2010. *It will automatically be continued unless terminated by the method prescribed in Section XII, Duration.*
>
> This Overview has been set forth to provide a brief summary of the contents of the most important elements of the Declaration. Prospective purchasers and their professional advisers should read the entire Declaration before making an offer to buy.

*Id.* at 36a (emphasis added). Additionally, Section 3.1 provides, in relevant part, that "[a]n owner shall automatically be a member of the Association, when it is formed." *Id.* at 44a.

> In turn, Section 12.1 of the Declaration provides, in pertinent part:
>
> This Declaration, as amended shall continue in full force and effect against the Property and the Owners thereof until January 1, 2010. In the event that this Declaration is terminated under this provision, or any other provision or article contained herein, a similar Declaration shall be executed and recorded in the Public Records of the County, if necessary, to insure a continuation of the operational, administrative, and maintenance services performed by the Association hereunder.

R.R. at 57a.

> Additionally, Section 13.1 states, in relevant part:
>
> Except as specifically provided otherwise in this Declaration, any of the terms and provisions in this

4

Declaration may be amended or deleted, and/or new terms or provisions may be created by an amendment to this Declaration approved by the affirmative consent of sixty-five percent (65%) of the Voting Rights in the Project[.]

R.R. at 57a-58a.

Moreover, Section 21.1(C) and (G) provides:

Until the veto right under this Article XXI is specifically waived in writing by [the Authority], [the Authority] hereby expressly reserves the right to veto any or all of the following events and/or actions, and upon such veto, such vetoed events and/or actions shall be null and void:

\* \* \*

C.     Attempted re[-]subdivision of the Property, or any part thereof; [or]

\* \* \*

G.     Attempted dissolution of the Association.

R.R. at 60a-61a.[3]

Finally, Section 16.1 states, in relevant part:

Any and/or all of the ["rights and obligations"] reserved by or granted to the [Authority] hereunder may be assigned by the [Authority]. The assignment shall be (a) in writing, (b) recorded in the Public Records of the County, and (c) joined [by the] assignee for purposes of

---

[3] Likewise, Section 5.2 of the Declaration states:

For so long as [the Authority] owns the fee simple title to any Parcel in the Project, no Parcel shall be (i) platted (or re[-]platted) or subdivided (or re[-]subdivided) or (ii) combined with another Parcel for purposes of development, without the prior written approval of the Authority which approval may be withheld in the sole and absolute discretion of the Authority.

R.R. at 46a.

5

evidencing assignee's acceptance of the rights and obligations so assigned.

R.R. at 59a.

On April 30, 1991, the Authority conveyed six parcels in the development to Millcraft Investments, Inc. (Millcraft), totaling approximately 164 acres,[4] and two other parcels totaling 14.8 acres on September 30, 1993. On January 14, 1994, Millcraft conveyed this property to the Golf Club.[5] On June 18, 1996, the Authority conveyed a 7.9-acre parcel to the Golf Club.[6] *See* R.R. at 119a-167a.

---

[4] The deed conveying these parcels to Millcraft contained the following covenant:

> FIRST: The Grantee shall devote the property hereby conveyed only to the uses specified in the applicable provisions of the Zoning Ordinance of the Township of Cecil, as amended March 16, 1988, and the Western Center Redevelopment Plan.

R.R. at 129a. The deed also stated, in relevant part:

> The covenants and agreements contained in the covenant numbered FIRST shall terminate on January 1, 2010, the period specified or referred to in the Contract for Sale of Land for Private Redevelopment, or until such date thereafter to which it may be extended by proper amendment of the Contract for Sale of Land for Private Redevelopment, on which date, as the case may be, such covenants shall terminate.

*Id.* at 130a. The 1993 deed conveying the additional two parcels by the Authority to Millcraft contains the same language. *See id.* at 148a, 149a.

[5] As this Court has explained, the Golf Club's property "consists of 8 parcels totaling 188 acres," "and is surrounded by 160 other parcels of mixed zoning classifications, all of which have been developed," "includ[ing] 3 industrial properties, 15 commercial properties, and 142 residential properties." *Southpointe Golf Club, Inc. v. Board of Supervisors of Cecil Township*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 148 C.D. 2020, filed February 19, 2021), slip op. at 2 (citations omitted).

[6] Section 5 of Part I of the Contract for Sale of Land for Private Redevelopment between the Authority and the Golf Club states:
**(Footnote continued on next page…)**

6

The covenant pertaining to the use of the Property, set forth in Section 401 hereof and in the "Declaration of Protective Covenants of Southpointe" (hereinafter called "Covenant") as recorded in Recorder of Deeds Office of the County of Washington, shall remain in effect from the date of the Deed until January 1, 2010[,] the period specified or referred to in the Covenant, *or until such date thereafter to which it may be extended by proper amendment of the Covenant*.

R.R. at 93a (emphasis added).

In turn, Section 401 of the Terms and Conditions in Part II of the Contract for Sale of Land for Private Redevelopment between the Authority and the Golf Club states:

Restrictions on Use:

The Redeveloper agrees for itself, and its successors and assigns, and every successor in interest to the Property, or any part thereof, and the Deed shall contain covenants on the part of the Redeveloper for itself, and such successors and assigns, that the Redeveloper and such successors and assigns shall:

a.      Devote the Property to, and only to and in accordance with, the uses specified in the Zoning Ordinance of the Township of Cecil as amended, March 16, 1988.

b.      Not discriminate upon the basis of age, race, color, creed, sex, or national origin in the sale, lease, or rental or in the use or occupancy of the Property or any improvements erected or to be erected thereon, or any part thereof.

c.      All advertising (including signs) for sale and/or rental of the whole or any part of the Property shall include the [enumerated] legend[.]

*Id.* at 104a.

Finally, Section 807 provides:

None of the provisions of the Agreement are intended to or shall be merged by reason of any deed transferring title to the Property from
**(Footnote continued on next page…)**

On November 4, 2003, the Authority recorded a Waiver and Release of Veto Power Under Declarations of Protective Covenants (Waiver and Release), which states, in pertinent part:

> [T]he Authority hereby waives and releases to the [Association] all of its right, title and interest to veto power set forth in the Declaration of Protective Covenants for Southpointe[,] Section 21.1(A, B, E and F) absolutely. [The] Authority further waives its veto rights set for in the [Declaration] Section 21.1, <u>except</u> with regard to Parcels 11A, 11B, 11C, 11D, 11E, 11F, 11G and 11H[,] which include the golf club, golf course and lake, and for which and over which the Authority specifically excludes said waiver and release and will continue in the future to assert its veto rights under the [Declaration], Section 21.1(C), and reserves the right to enforce those rights at law and in equity.

R.R. at 234a (emphasis in original).

Later that month, the Authority and the Association executed an Assignment of Declaration of Protective Covenants and Assumption of Obligations (Assignment) in which the Authority assigned to the Association all of it "rights, title, interest, powers, obligations, easements and estates" contained in the Declaration, except for the following:

> 8.    [The Authority] hereby waives its rights under Section 21.1 of the [Declaration], as aforesaid, except that [the Authority] specifically excepts, reserves and retains the veto rights provided by Section 21.1(C) only as to the [Golf Club] (including, but not limited to, the clubhouse and all property used as part of the Southpointe Golf Club) and 21.1(G) as more fully set forth in the [Waiver and

---

the [Authority] to the Redeveloper or any successor[-]in[-]interest, and any such deed shall not be deemed to affect or impair the provisions and covenants of the Agreement.

*Id.* at 118a.

Release], a copy of which is attached hereto and made a
part hereof[.]

R.R. at 249a, 251a.

On November 18, 2014, the Association recorded a Certificate of Amendment stating, in pertinent part, that "Section 13.1 of the General Procedures provides that the Declaration may be amended by the affirmative vote of sixty-seven percent (67%) of those persons or entities entitled to Voting Rights," and that "more than sixty-seven percent (67%) of the persons or entities holding Voting Rights pursuant to the Declaration have approved the within Amendments to the Declaration." R.R. at 169a. Accordingly, the Certificate of Amendment states that Section 12.1 of the Declaration "is deleted in its entirety and replaced as follows":

> This Declaration as amended, shall continue in full force and effect against the Property and the Owners thereof in perpetuity unless and until this Declaration is terminated under any other provision or Article contained herein, a similar Declaration shall be executed and recorded in the Public Records of the County, if necessary, to insure a continuation of the operation, administrative, and maintenance services performed by [the Association] hereunder, [the Association] shall have no obligations or liabilities with respect to, or arising from, the termination of this Declaration.

*Id.* at 169a-170a.

In an October 12, 2015 letter, Horizon Properties Group LLC (Horizon) notified the Authority of its intention to subdivide the Golf Club's property to develop the Hope Learning Center, a care facility for special needs children. *See* R.R. at 253a. On November 10, 2015, the Authority's solicitor responded, explaining that the Authority retained veto power over the subdivision of the Golf Club's property under the 2003 Waiver and Release and required timely notice of Horizon's intention to subdivide the property. *See id.* The solicitor indicated that

9

"[w]ithout more specific information," the Authority could not "commit to object or not object to any [Golf Club property] subdivision to accommodate that project." *Id.* As a result, the Authority asked Horizon to "provide any and all currently existing agreements, renderings, timelines, plans, specifications, etc. to allow [the Authority] to respond to [the] request." *Id.*

On November 16, 2015, the Golf Club filed the instant action under the DJA against the Authority and the Association. After preliminary objections were filed, on December 28, 2015, the Golf Club filed the Amended Complaint naming the Association, the Authority, and all of the owners of the property in the Southpointe development as defendants[7] (collectively, Defendants). In the Amended Complaint, the Golf Club asked the trial court to declare that: (1) the Declaration terminated as of January 1, 2010; (2) the Authority's veto power regarding the Golf Club's property terminated as of January 1, 2010; (3) the 2014 Certificate of Amendment continuing the Declaration "is null and void"; or (4) Section 21.1(C) of the Declaration "is null and void, given [the Association's] failure to comply with the Uniform Planned Community Act [(Act)].[8]" R.R. at 28a, 34a.

On December 5, 2016, the trial court overruled the preliminary objections. Following discovery and an attempt at settlement, the parties filed cross-motions for summary judgment. The Golf Club sought summary judgment that: (1) the Declaration terminated as of January 1, 2010, because Section 12.1 of the Declaration constitutes a self-executing termination of the planned community under

---

[7] Additionally, by January 6, 2016 order, the trial court permitted Ironwood/Wedgewood Homeowners' Association, Inc., Fairway Landings Townhomes of Southpointe Association, Inc., and The Fairways Condominium at Southpointe Association, Inc., to intervene as defendants in the action.

[8] 68 Pa. C.S. §§5101-5414.

Section 5220(i) of the Act;[9] (2) as a result, the Authority's veto power over the re-subdivision of the Golf Club property under Section 21.1(C) of the Declaration also terminated as of January 1, 2010; (3) the 2014 Amendment to the Certificate was null and void given the Association's failure to obtain the Golf Club's express consent as required by Sections 5201[10] and 5219(d)(1) of the Act;[11] and (4) the veto power in Section 21.1(C) is null and void given the Association's failure to obtain the Golf Club's express consent to the 2014 Amendment to the Certificate as required by the Act. *See* R.R. at 549a-562a. The Defendants took the opposite position in their cross-motion.

On August 26, 2019, the trial court denied the Golf Club's motion for summary judgment, granted Defendants' cross-motion for summary judgment, and entered judgment in favor of Defendants and against the Golf Club. In the opinion

---

[9] 68 Pa. C.S. §5220(i). Section 5220(i) states, in relevant part:

> In the case of a declaration that contains no provision expressly providing for a means of terminating the planned community other than a provision for a self-executing termination upon a specific date or upon the expiration of a specific time period, such termination provision shall be deemed ineffective if no earlier than five years before the date the planned community would otherwise be terminated[.]

[10] 68 Pa. C.S. §5201. Section 5201 states in relevant part: "A planned community may be created pursuant to this subpart only by recording a declaration executed in the same manner as a deed by all persons whose interests in the real estate will be conveyed to unit owners and by every lessor of a lease. . . ."

[11] 68 Pa. C.S. §5219(d)(1). Section 5219(d)(1) states, in pertinent part: "Except to the extent expressly permitted or required by other provisions of this subpart, without unanimous consent of all unit owners affected, no amendment may create or increase special declarant rights. . . ." The Golf Club posits that although the veto right is not enumerated in the definition of "special declarant rights" in Section 5103, that list is not exclusive. *MetroClub Condominium Association v. 201-59 North Eighth Street Associates, L.P.*, 47 A.3d 137, 152 (Pa. Super. 2012).

11

filed in support of its order, the trial court determined "as a matter of law, the Declaration has not expired or terminated. No ambiguity exists in the Declaration. Construing the Declaration in light of its language, its subject matter, its intent, and the conditions surrounding its execution, the Declaration 'automatically continued' after January 1, 2010." R.R. at 1863a. Specifically, the trial court determined that "[t]he Declaration, as originally written, had a term that *could end no earlier than January 1, 2010.*" *Id.* at 1857a (emphasis in original). The court also found that "far from 'confirming' the Golf Club's interpretation of the Declaration, reading the Sales Contract and the Deeds, together, provides no evidence that the Declaration was intended to automatically terminate on January 1, 2010. Instead, these later transactions support the interpretation that the Declaration had a different term." *Id.* at 1862a. Importantly, in light of the requirements of Section 12.1 for an effective termination and Section 13.1 for an effective amendment, the trial court noted that "no document terminating the Declaration has ever been filed or recorded by [the Authority] or [the Association]," "no Declaration has been recorded as required by Section 12.1 if a termination occurred," and "as Article XIII directs, an amendment requires [the] affirmative consent of a specific percentage of 'voting rights' in the 'project.'" *Id.* at 1862a-1863a. The Golf Club then filed the instant appeal of the trial court's order.[12]

The Golf Club's numerous claims on appeal may be summarized as follows: (1) the trial court erred in relying on the Declaration's Overview in determining that its unambiguous terms demonstrate that the Declaration did not

---

[12] "Appellate review of a trial court's grant of summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. Moreover, summary judgment may be granted only in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law." *Bashioum v. County of Westmoreland*, 747 A.2d 441, 442 n.1 (Pa. Cmwlth. 2000) (citation omitted).

12

terminate on January 1, 2010; (2) the trial court erred in failing to apply the Act and determine that the Declaration terminated by its own terms on January 1, 2010; (3) the trial court erroneously interpreted the sales contracts executed contemporaneously with the Declaration to support its determination that the Declaration would continue in effect beyond January 1, 2010; (4) the trial court erred in failing to find that the Authority's veto power was terminated on January 1, 2010; and (5) the trial court erred in failing to determine that the 2014 Certificate of Amendment was null and void because the Association failed to obtain the unanimous consent of all property owners for its adoption as required by the Act.

We initially observe that "[p]etitions for declaratory judgments are governed by the provisions of the [DJA]." *Brouillette v. Wolf*, 213 A.3d 341, 357 (Pa. Cmwlth. 2019) (citation omitted). As this Court has explained:

> Declaratory judgments are not obtainable as a matter of right. Rather, whether a court should exercise jurisdiction over a declaratory judgment proceeding is a matter of sound judicial discretion. Thus, the granting of a petition for a declaratory judgment is a matter lying within the sound discretion of a court of original jurisdiction.

*Id.* (citations omitted). Additionally, "[a]n abuse of discretion 'is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record, discretion is abused.'" *Adams v. Adams*, 725 A.2d 824, 827-28 (Pa. Super. 1999) (citation omitted).

Further, as this Court has observed:

> A declaration of a planned community is equivalent to a contract between a member of a homeowners['] association and the association itself. *See Wrenfield*

13

*Homeowners* [*Association*] *v. DeYoung*, 600 A.2d 960, 963 (Pa. Super. 1991) (treating homeowner[s'] association declaration as contract between homeowner[s'] association and its members). When interpreting a contract:

> [W]e attempt to ascertain the intent of the parties and give it effect. When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement, which will be given its commonly accepted and plain meaning.
>
> Additionally, in determining the intent of the contracting parties, all provisions in the agreement will be construed together and each will be given effect. Thus, we will not interpret one provision of a contract in a manner which results in another portion being annulled.

*LJL Transp*[*ortation*]*, Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647-48 (Pa. 2009) (citations omitted). In sum, the court will "adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement." *Wrenfield*, 600 A.2d at 963.

*Hilltop Summit Condominium Association v. Hope* (Pa. Cmwlth., No. 4 C.D. 2014, filed July 10, 2014), slip op. at 15-16.[13]

When construed as outlined above, the trial court did not err in considering the provisions of the Overview in addition to, and in light of, all of the other substantive provisions of the Declaration. As a result, with respect to the claims raised in this appeal, the Golf Club's arguments are all based on the faulty premise that Section 12.1 of the Declaration constitutes a self-executing termination

---

[13] *See* Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a) ("Parties may . . . cite an unreported panel decision of this court issued after January 15, 2008, for its persuasive value, but not as binding precedent.").

of the Southpointe planned community under Section 5220(i) of the Act so that the 2014 Certificate of Amendment is, in essence, creating a new Southpointe planned community thereby requiring unanimous consent under Section 5201, and the creation of a special declarant right also requiring unanimous consent under Section 5219(d)(1). As Defendants argue, and as the trial court correctly determined, the applicable provisions of the Act do not affect or invalidate the applicable provisions in the Declaration regarding its termination or amendment, under Section 12.1 for an effective termination and Section 13.1 for an effective amendment, because the Declaration was executed and recorded prior to the Act's enactment.

Indeed, as this Court explained in *Huddleson v. Lake Watawga Property Owners Association*, 76 A.3d 68, 72 (Pa. Cmwlth. 2013):

> Generally, the Act applies to planned communities created after 1997 when the Act became effective. Parts of the Act apply retroactively to planned communities created prior to the effective date of the Act. Section 5102(b) of the Act sets forth the specific sections of the Act that apply retroactively. That section also makes it clear that "those sections apply only with respect to events and circumstances occurring after the effective date of this subpart and ***do not invalidate specific provisions contained in existing provisions of the declaration, bylaws or plats and plans of those planned communities***." 68 Pa. C.S. §5102(b) (emphasis added).

Moreover, as the trial court noted, "[r]estrictive covenants must be construed in light of their language, their subject matter, the intent or purpose of the parties, and the conditions surrounding their execution. *Perrige v. Horning*, [654 A.2d 1183, 1188 (Pa. Super. 1995) (citations omitted)]." R.R. at 1855a. Reading and applying all of the unambiguous language of the four corners of the Declaration, it was not terminated under its terms and Section 12.1 was properly amended pursuant to its terms. As a result, all of the executed covenants continue to be

15

binding, the 2014 Certificate of Amendment is binding, and the Authority's veto rights were preserved under the 2003 Waiver and Release and the 2003 Assignment.

Finally, and quite importantly,[14] Section 10(a), (c)(9), and (i) of the URL states, in pertinent part:

> (a)    An Authority shall prepare a redevelopment proposal for all or part of any area certified by the planning commission to be a redevelopment area and for which the planning commission has made a redevelopment area plan.
>
> * * *
>
> (c)    The planning commission's redevelopment area plan shall include, without being limited to, the following:
>
> * * *
>
> (9)    A statement of such continuing controls as may be deemed necessary to effectuate the purposes of this act.
>
> * * *
>
> (i)    Upon approval by the governing body of the redevelopment proposal, as submitted by the Authority, the Authority is authorized to take such action as may be necessary to carry it out.

35 P.S. §1710(a), (c)(9), & (i).

Likewise, Section 11(a)(9) of the URL provides, in relevant part:

> (a)    The contract between the Authority and a redeveloper shall contain, without being limited to, the following provisions:

---

[14] "The 'right for any reason' doctrine allows an appellate court to affirm the trial court's decision on any basis that is supported by the record. *See Ario v. Ingram Micro, Inc.*, [965 A.2d 1194, 1200 (Pa. 2009)] ('an appellate court may uphold an order of a lower court for any valid reason appearing from the record')." *In re A.J.R.-H.*, 188 A.3d 1157, 1175-76 (Pa. 2018).

16

(9)     Such other continuing controls as may be deemed
necessary to effectuate the purposes of this act[.]

35 P.S. §1711(a)(9).  As a result, as outlined above, Sections 9 and 11 of the URL specifically contemplate and empower the Authority to execute the relevant documents to impose the restrictive covenants in the Declaration and to retain its veto power as provided under Section 21.1(C) of the Declaration.[15]

Furthermore, as outlined above, the Authority's power to act in any manner contravening the purposes of the Southpointe development or the restrictive convenants, or prejudicing the rights of all of the property owners in the development, is severely circumscribed by Section 9(k) of the URL.  *See* 35 P.S. §1709(k) ("Provided, That with respect to a redevelopment area the Authority finds that the sale, lease or other transfer of any part will not be prejudicial to the sale or lease of the other parts of the redevelopment area, nor be in any other way prejudicial to the realization of the redevelopment proposal approved by the governing body.").

In this vein, this Court has explained:

Activities of public authorities should be subject to judicial scrutiny.  We agree with what Justice Roberts said in *Price v. Philadelphia Parking Authority*, [221 A.2d 138, 145 (Pa. 1966)]: 'As public bodies, they exercise public powers and must act strictly within their legislative mandates.  Moreover, they stand in a fiduciary relationship to the public which they are created to serve and their conduct must be guided by good faith and sound judgment.  *See Schwartz v. Urban Redevelopment* [*Authority*, 192 A.2d 371, 374 (Pa. 1963)]; *Heilig* [*Brothers*] *Co. Inc. v. Kohler*, [76 A.2d 613, 616 (Pa.

---

[15] *See also* Section 11(b) of the URL, 35 P.S. §1711(b) ("Any deed or lease to a redeveloper in furtherance of a redevelopment contract shall be executed in the name of the Authority . . . and shall contain in addition to all other provisions, such provisions as the Authority may deem desirable to run with the land in order to effectuate the purposes of this act[.]").

1950)]. The mushrooming of authorities at all levels of government and the frequent complaint that such bodies act in an arbitrary and capricious manner in violation of existing law dictate that a check rein be kept upon them. *Schwartz v. Urban Redevelopment* [*Authority*, 192 A.2d 371, 374 (Pa. 1963)]; *Keystone Raceway Corp. v. State Harness Racing* [*Commission*, 173 A.2d 97, 99 (Pa. 1961)].'

*Redevelopment Authority of City of Erie v. Owners or Parties in Interest*, 274 A.2d 244, 247 (Pa. Cmwlth. 1971).

Based on the foregoing, the trial court properly construed all of the provisions of the Declaration and all of the other relevant documents executed by the Authority so as to comply with the pertinent and controlling provisions of the Declaration, the Act, and the URL. As a result, the trial court did not err or abuse its discretion in denying the requested declaratory relief.

Accordingly, the trial court's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Southpointe Golf Club, Inc.,                          :
                                                      :
                                    Appellant          :
                          v.                           :  No. 1420 C.D. 2019
                                                      :
Southpointe Property Owners' Association,             :
Inc.; Redevelopment Authority of the                  :
County of Washington; R&M Investment                  :
Group LLC; Technology Drive LLC;                      :
Ansys, Inc.; Crown Castle USA, Inc.;                  :
701 Technology Drive Partners L.P.;                   :
Creehan Properties, LP; SPCDMG LTD;                   :
1750 East Realty, L.L.C.; Landmark                    :
Limited Partnership; Southpointe                      :
Rink Assoc L.P.; Centimark Corporation;               :
Southpointe 16 Associates; Kossman-                   :
Phoenix Limited Partnership; Andritz                  :
Metals, Inc., f/n/a Bricmont, Inc., f/n/a             :
Andritz Bricmont, Inc., Hershey Leasing               :
Company, LP; Champ Investment                         :
Limited Partnership; Creehan Properties               :
151, LP; Auma Actuators Inc.; Mark K.                 :
German; Accutrex Products, Inc.;                      :
Southpointe #4 Green Associates; Four                 :
Thousand Nine Hundred West Broad Street               :
Laundry, LLC a/k/a 4900 West Broad Street             :
Laundry, LLC an Ohio limited liability                :
company n/k/a Fairway View, LLC;                      :
Southpointe 375 Associates, L.P.; Merces              :
De Quevedo Freemon 2007 Living Trust,                 :
Philip G. and Richard A. Freemon Trustees;            :
Lexington TNI Canonsburg, LP; Summit                  :
& Plaza II Holdings LP; Ronald M. Kean                :
& R. George Yurasko and Frederick A.                  :
Farrell Trustees of United Food &                     :
Commercial Workers, Local Union 23;                   :
Nelson M. and Darlene M. Heeter;                      :
Southpointe/Miller Limited Partnership;               :
501 Technology Partners, LLC;                         :

Schenley Center Assoc II LP; 121          :
Champion LLC; Technology Drive, LLC;      :
KRB Development Co., L.P.;                 :
Fountainhead Southpointe Associates;      :
Southpointe Hotel and Conference Center   :
L.P., Summit & Plaza II Holdings, LP;     :
Dialysis Clinic, Inc.; Ages Associates LP :
Washington County Authority; Lawrence     :
and Kimberly A. Melen; Donald K. and      :
Pamela B. Robinson; Sophia C. Sarris;     :
William A. and Kathleen Baron; Everett E. :
Dunn and Connie A. Dunn, Trustees Of      :
The Dunn Revocable Trust dated            :
November 13, 2008; James E. and Tracey L  :
Jacobs; Thomas P. Kazas and Sandra Frank  :
-Kazas; Brett E. Murawski and Kelly J.    :
Chaney; Walter E. and Barbara A. Kryspin; :
Gary M. Stefansky and Suzanne A.          :
Orbanick-Stefansky; Mark and Lauren M.    :
Lega; Andrew J. and Maureen L. Kicinski;  :
Betty Harris Rainier Revocable Trust dated :
May 15, 2012, Betty Harris Rainer Trustee; :
Jeffrey J. and Janene M. Jost; Mary Jane  :
Broglia; Cary D. Cowden; Louis V. and     :
Elizabeth Valente; Ronald L. and Elaine C. :
Friedman; Paul Robert and Regina M.       :
Johnston; Guthrie and Viola Taboni;       :
Patrick G. and Lyn C. McGinnis; James H.  :
and Donna J. White;  Richard Otter and    :
Deborah C. Friedrich; Joseph J. and Mary  :
Ann Brown; Bruce E. and Margaret  A.      :
Hough; Raymond W. Sauer, Jr. and Helen    :
F. Sauer; Geno A. and Justine Pisciottano; :
John P. and M. Kathleen Fox; Richard A.   :
and Sharon Barcelona; Geno R. and         :
Cynthia N. Levi; Steven W. and Melissa    :
Ann Chesher; Mark S. and Gen Cameron      :
Wilson; William K. and Patricia Snodgrass; :
Jeffrey M. and Angela D. Abbott; David A. :
and Mary E. Fetchko; Louis and Joellyn    :
Barletta; Kevin F. Owsiany; John C. and   :
Arlene E. Stankus; Douglas R. and Melissa :
L. Hodinko; Elizabeth E. and Daniel F.    :

Vorum; Fairway Landings Townhouses : of Southpointe Assn. Inc.; Kevin and : Doreen Lynn Ruffe; Terri Bush Brown; : William B. and Connie Gross; Wendy Jean : Obrien; Paul B. DeFazio; David A. Ross; : Griffith Family Trust, Peter D. Friffith and : Bonnie L. Griffith, Trustees; Peter H. and : Joyce I. Phillips; William R. Piper and : Linda O'Leary; Regis J. McKenzie, III; : Gayla R. Hagg; Steven Speca; Tony L. and : Jan B. Angelle; Ruth A. Lutz, Trustee For : The Lutz Family Trust; William J. and : Deborah A. Harrison; Roger D. Graham, Jr. : and Mary Ann Graham; Patricia K. Hazen; : Heart & Seoul Productions, LC a Michigan : limited liability company, Stephanie L. : Kubik; Michele A Docchio; John S. and : Ellen J. Steigerwald; Marilyn I. Goodwill; : Corinne McCullough; Phillip J. Falconi; : Mark E. Nance; Walter M. Castro; Lynn A. : Deppen; Michael W. and Kathy Smith; : Mark I. Linn and Renee A. Battistone; : Varun Mishra; David Harkreader and : Lynne D. Dunn; Southpointe Holdings, : LLC; Jeffrey H. and Jonelle M. Stambaugh; : Luca Zoia and Chiara Gonin;  Katheryn : Leigh Tate; Alexandra Kusturiss; John A. : and Marianne Zywan; Jeffrey J. Livolsi; : Christopher J. and Lyn R. Logelin; Thomas : J. and Betty J. Zayac; Douglas B. Blobner : Revocable Living Trust, dated : October 20, 2010, Douglas B. Blobner : Trustee; Robert S. and Janet M. Camel; : Richard K. and Penny Ann L. Thomas; : Eric J. and Connie I. Bruce; Wayne Trust : Walter K. and Virginia M. Wayne Trustees; : Subhash Joon; Derek  A. Rice; Gregory A. : Karabetsos; Janet Torriero; John and Carol : Riddle; Donald L. and Margret S. Hocevar; : Mary Kay Graziano; Margaret K. Fischer; : Thomas Lee and Allyson Ann Fritz; : Samuel J. Rodgers and Rebecca L. Black; : Edmond A. and Susan Marie Cononge; :

Robert F. Milinski and Stanley J. Zawacki; :
Roslyn Corton; Ying Wei; Marlene V. :
Pierotti Revocable Trust, Marlene V. :
Pierotti, Trustee; Richard C. Goodwill; :
Timothy J. and Carmen Cecilia Aitken; :
Joe and Anne Trask; Bonita L. Sidick; :
David H. and Victoria L. Smith; Alice F. :
Dagg Trust; Alice F. Dagg Trustee; Larry J. :
and Catherine A. Cavallo; Cindy Rice- :
Andrea and Richard Andrea; Dolores Kara :
Revocable Trust Dolores Kara Trustee; :
Bernard John Hobach 2001 Irrevocable :
Trust, Bernard J. Hobach, Trustee; Nancy :
E. Flynn; Paul J. and Geraldine McKosky; :
Melelaos and Kiki Doumas Living Trust :
dated December 20, 1999, Menealaos :
Doumas and Kiki Doumas, Trustees; :
Richard J. Kawalek; Patricia Nan Daum; :
Lynda L. Kelly; Charles W. and Dawn :
Lynn Fike; Norman Michael Revocable :
Trust, Alice J. Michael Trustee; Earl L. :
and Maria A. Romesberg; William R. and :
Jennifer S. Davis; Derek Peabody and :
Ashley R. Pawlish; Joseph A. and Amy L. :
Wateska; Gary D. and Karen L. Smith; :
Ronald M. and Eva M. Bozick; Robert J. :
Braithwaite, Sr., and Mary T. Braithwaite; :
Phillip J. Binotto, Jr. and D. Jill Binotto; :
William S. and Laura K. Tate; Shaney L. :
Rudar; Scott T. and Lauren Dooley; :
Raymond R. Parry, Sr. and Barbara L. :
Parry; David A. and Cheryl S. Bayne; :
Frank C. Botta; Michael J. and Irene :
A. Fostyk; Timothy P. and Stephanie :
Galloway; Peter F. and Deborah L. :
Singleton; Richard Dean and Judith Ellen :
McAllister; Paul V. Ambrose Family :
Trust, Paul V. Ambrose and Gloria J. :
Ursitz Trustees; Dennis P. and Pamela J. :
Weakland; Richard K. Miller; Camille M. :
Herbert; Arthur and Ellen Mezerski; Scott :
C. and Laurel L. Sanders; Ruth Ann :
Falconi; Bernard J. Shaughnessy, Jr. and :

Melissa J. Shaughnessy; Justin R. Domachowski; Ronald J. and Natalie A. Aiello; Scott Cook; Southpointe Development LLC d/b/a Southpointe Apartments; Terry Ann McCaffrey; Renee Cavalovich; Doreen V. Latona; Robert Premro; Adrienne L. Compeggie; William H. and Phyllis J. Savatt; George S. Villani; Mark Borden; Herbert F. and Ana L. Balzuweit; Adam J. Fulton; GL Harakal Group, Inc; Gerald Thomas and Rebecca Marie Mathews; Tammi R. Brown; Fairway View, LLC; Scott and Alana Hudson; Alvin and Patricia Miller; Robert A. Simmers; Lynn S. Frank; Benjamin M. Neenan and Paige Williamson Neenan; Mac & Mac Properties LLC; Brett J. Ross; Mark E. and Jeanne E. Becker; Susan P. Armstrong; Susan R. Passante; Cory Bak; Rahul Bazaz; Lee and Alexis Wetzel; Scott T. Dooley; Kenneth and Linda Matz; James J. Ratti; Janelle Vicinelly; John, Jr. and Deanna R. Lubic; William L. Lyons, IV; Gerald W. and Susan M. Horton; Pamela C. Polacek; Joel Hatfield; Joan Doerschner Enz; Charles J. Stefko; Randy W. and Cathy J. Bell; Christian and Rochelle A. Delgado; Helga E. Kercher; James Franklin Realty LLC; Timothy McManama; C. Scott and Patricia R. Warman; Margot A. Vaughan; Richard C. and Dianna L. Sponaugle; Anthony K. Gianettino and Ironwood/ Wedgewood Homeowner's Association, Inc.; Fairway Landings Townhomes of Southpointe Association, Inc.; and The Fairways Condominium of Southpointe Association, Inc.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

# **O R D E R**

AND NOW, this 7th day of May, 2021, the order of the Washington County Court of Common Pleas dated August 26, 2019, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge

2